[Civ. No. 22072.   Second Dist., Div. Three.   Aug. 9, 1957.]

FLORENE GARIBALDI, Appellant, v. JIMMIE GARIBALDI, Respondent.

Milton R. Gunter and John E. Crooks for Appellant.

Thomas A. Wood and Thomas S. Bunn for Respondent.

WOOD (Parker), J.—Plaintiff obtained an interlocutory judgment of divorce against defendant on August 29, 1951. A final judgment of divorce was entered on January 22, 1954, upon an ex parte motion made by defendant.

On March 2, 1956, plaintiff filed a notice of motion, and a motion, to vacate the final judgment upon the ground that it was procured by extrinsic fraud of defendant, in that, on January 19, 1954, defendant filed a false ''Affidavit for Final Judgment of Divorce,'' which affidavit was known by defendant to be false and was filed with the intent to deceive and it did deceive the court; and defendant thereby obtained a judgment to which he was not entitled and which would not have been rendered except for said fraud.

Plaintiff appeals from the order denying her motion to vacate the final judgment.

Defendant's affidavit for final judgment was made upon a printed form of affidavit, which form, according to Rule 20 of Superior Court Rules (Judicial Council), he was required to use. Paragraph 2 of the printed form was, in part, as follows: ''2. That since the granting of said interlocutory judgment, (a) said parties have not become reconciled; (b) said parties have not lived or cohabited together; (c) . . . (d) . . . (e) . . . .''

Appellant (plaintiff) contends that the statements in the affidavit that the parties have not become reconciled and that ''said parties have not lived or cohabited together'' were false.

At the hearing on the motion, defendant testified that on eight or nine occasions, after the interlocutory judgment was entered, appellant called him by telephone and insisted upon conversing with him; as a result of the telephone calls he went to her home or other place of meeting and took her in his automobile to various motels where they remained and talked for some time; on three of those occasions they had sexual intercourse; on several occasions after the interlocutory judgment he, appellant, their daughter Sandra, and appellant's daughter Sharon (of a prior marriage) went on overnight trips to beaches; soon after the entry of the interlocutory judgment, when defendant expressed his desire to take the daughters on a trip, appellant told him he would not be permitted to take them unless he also took appellant on the trip; in order to provide a wholesome companionship between the girls, without discord with their mother, he acceded to appellant's demands and permitted her to accom-

pany them on that trip and subsequent trips; on one trip to a beach the four of them occupied the same motel room during the night; in 1953 he had business to transact in Reno and he took that opportunity to provide a vacation trip for the daughters, and in accordance with appellant's demand he also took appellant on the trip; while they were in Reno they stayed in two motels and in both the motels they had adjoining rooms; he and appellant did not occupy the same bed or have sexual intercourse during any of those trips; after the interlocutory judgment he and appellant did not have a common place of residence but each of them had a residence separate from the other; after the interlocutory judgment he never asked appellant to return as his wife; and there was no reconciliation between him and appellant.

Appellant testified that during the trip to Reno she took care of the girls while defendant attended to matters of business; defendant paid all the expenses of the trip and the family spent the evenings together; they were on the trip about three weeks and she and defendant slept in different beds; after the interlocutory judgment they had separate places of residence.

Sharon, the daughter of appellant by a prior marriage, testified that during the trips to beaches she did not see appellant and defendant occupy the same bed; on one of the trips the four of them stayed in the same motel room during the night; the trip to Reno lasted about six weeks; on a number of occasions appellant accompanied defendant when he came to a school (where Sharon was a pupil) and took Sharon to appellant's residence for the week-end.

Mrs. Repetti testified that in 1953, at Reno, appellant told her that appellant had no intention of going back to defendant—no intention of effecting a reconciliation with him.

Appellant argues that the words "have not . . . cohabited together," used in defendant's affidavit, mean that the parties had not had an act of sexual intercourse. She also argues that the words "have not lived . . . together," used in the affidavit, should not be taken in a technical sense to mean abiding in the same matrimonial domicile; but that those words should be taken "in the popular sense" and if during the interlocutory period the parties "have shared the same room, have taken overnight trips together, or have been together in any manner which would not be condoned by society were they unmarried persons, then there has been a living together within the meaning of the affidavit." Ap-

pellant cites two California cases wherein it is indicated that the word "cohabit," as used therein, means sexual intercourse. (See *Broder* v. *Broder,* 122 Cal.App. 296 [10 P.2d 182], and *Hayes* v. *Hayes,* 144 Cal. 625 [78 P. 19].) In *McClure* v. *McClure,* 205 Ark. 1032 [172 S.W.2d 243], cited by appellant, it was said (pp. 1033-1034): "The word 'cohabitation' has two well-recognized meanings. Under the strict or derivative definition 'cohabitation' means living together in the same abode while under the other, or popular, definition 'cohabitation' means sexual intercourse." Some of the cases referred to in the McClure case, *supra,* indicate that the word "cohabit" has two meanings. (See *De Berry* v. *De Berry,* 115 W.Va. 604 [177 S.E. 440]; *Herrman* v. *Herrman,* 93 Misc. 315 [156 N.Y.S. 688].)

In the present case, it was a question of fact for the trial court as to what the defendant understood was the meaning of the statements in the printed form. As above shown, courts have said that the word "cohabit" has two meanings. Also, as indicated by appellant's argument, the expression "lived . . . together" has two meanings. It is implied in the order denying the motion to vacate the judgment that the trial court found that defendant understood the words in a sense that would accord with verity, rather than falsity. It appears that the court found, impliedly, that defendant understood the statements to mean that the parties had not become reconciled and had not resumed living together in the same matrimonial domicile as reunited husband and wife. The judge, in rendering his oral decision, stated that he resolved "all of the conflicts . . . in favor of the respondent [defendant], as far as the conduct, what it constitutes." In *Peterson* v. *Peterson,* 135 Cal.App.2d 812 [288 P.2d 171], it was said at page 815: "There had been some cohabitation between the parties but defendant's letter . . . shows conclusively that it was without intention, at least on the husband's part, and his attitude known to defendant, to reunite as husband and wife. As said in *Estate of Abila,* 32 Cal.2d 559, 561 [197 P.2d 10]: '. . . occasional cohabitation does not alone establish a reconciliation.'"

Appellant cites *Thorp* v. *Thorp,* 165 Wash. 255 [4 P.2d 1103], wherein plaintiff in applying for a final decree of divorce filed an affidavit which stated that since the entry of the interlocutory decree plaintiff "has not lived with or cohabited with" the defendant. Upon motion of defendant therein the final decree was set aside upon the ground that

plaintiff's affidavit was false. The reviewing court therein stated that the findings of the trial court were supported by the evidence. That case is distinguishable from the present case in that the trial court therein found that the affidavit was false, whereas in the present case the trial court found (impliedly) that the affidavit was not false.

As above indicated, the question as to whether defendant's affidavit was false was a question of fact for the trial court. This court is not empowered to weigh the evidence. It is to be noted that plaintiff did not deny the testimony of Mrs. Repetti that plaintiff said she had no intention of effecting a reconciliation with defendant. The evidence was legally sufficient to support the implied findings of the trial court.

The order is affirmed.

Shinn, P. J., and Vallée, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 3, 1957.