[Civ. No. 17889.   First Dist., Div. One.   Jan. 21, 1959.]

DANIEL J. NACHT, Appellant, v. LUCILLE D. NACHT, Respondent.

[Civ. No. 17928.   First Dist., Div. One.   Jan 21, 1959.]

DANIEL J. NACHT, Respondent, v. LUCILLE D. NACHT, Appellant.

[4]In another case this day decided, *Nacht* v. *Nacht, post,* p. 254 [**334** P.2d 275] that very question was in issue and decided.

Lange & Rockwell for Appellant (No. 17889) and Respondent (No. 17928).

George F. Jansen for Appellant (No. 17928) and Respondent (No. 17889).

PETERS, P. J.—These consolidated appeals grow out of a divorce proceeding. The wife appeals from an order setting aside a prior order of the court denying a motion of the husband for the entry of a final decree, and from the entry of the final decree (No. 17928). The husband appeals from an order awarding the wife costs on her appeals (No. 17889).

The parties were married on November 27, 1954. They separated five or six months later. The husband brought an action for divorce. The wife cross-complained. With the consent of the husband, the matter was submitted on the cross-complaint of the wife. On November 30, 1955, an interlocutory decree was entered in favor of the wife, which decree also incorporated a property settlement agreement. On November 29, 1956, the husband filed a notice of motion for entry of the final decree. The supporting affidavit of the husband averred that there had been no reconciliation between the parties and that since the interlocutory the "parties have not lived or cohabited together." This contested motion came before the trial court for hearing on December 5, 1956. The husband testified that he was an architect, with offices in

Sacramento and San Francisco; that he lived in Sacramento; that his wife lived in Palo Alto; that since the entry of the interlocutory there had been no "reconciliation," nor had the parties "cohabited." On cross-examination he admitted that during the period of the interlocutory he had spent many week ends with his wife, and that on these occasions he had either stayed at a motel alone, gone back to his home in Sacramento to sleep, or sometimes spent the night or nights at his wife's house in Palo Alto. He denied sharing her bedroom, but conceded that on these occasions he had had sexual intercourse with her, finally admitting that this had occurred at least 20 times. The wife testified that after the interlocutory her husband visited her in Palo Alto every week end; that on these occasions he shared her bedroom; that they had intercourse on every visit; that during these visits they discussed going back to live together; that it was her understanding that they had become reconciled, and that she was to join him in Sacramento as soon as he could arrange things there. She further testified that she had unconditionally forgiven him for the cruelty which was the basis of the interlocutory.

The trial judge made several relevant comments about this testimony. While the wife was being cross-examined, the judge stated: "The Court: I have heard enough about it. I can't reconcile the testimony of the plaintiff here. His affidavit says that he never cohabited during the period, which, of course, is deliberate perjury. He admitted he's had intercourse with her about once a week ever since the granting of the interlocutory decree of divorce. And certainly that conduct, this Court views as being a tacit understanding of a reconciliation. At this time I will grant the motion to set aside the interlocutory decree of divorce."

When it was called to his attention that no motion to set aside the interlocutory had been made, the judge then told the attorney for the wife: "The Court: You are to prepare an order and see that it is filed, denying this man the right to secure a final decree of divorce. Then I would suggest you prepare a motion to set aside the interlocutory decree of divorce."

When the attorney for the husband asked if he could complete the cross-examination of the wife, the judge stated: "The Court: No, I have heard enough. . . . His testimony, and hers, is that they have cohabited on an average of once a week since the interlocutory decree of divorce, and nothing else—no conversations about reconciliation, or anything else;

this court is of the opinion and so finds that in itself—his actions, he being the plaintiff in the original action—his actions and hers certainly indicate to this Court the proper finding [is] that there has been a reconciliation, by their conduct, and I therefore say that he is not entitled to a final decree of divorce. And when, as and if this motion is made to set aside the interlocutory, I will grant that motion, too.''

On December 10, 1956, the wife, pursuant to the directions of the trial judge, noticed a motion for December 18, 1956, for an order to set aside the interlocutory and the property settlement. In the meantime, the wife's counsel, pursuant to the directions of the trial judge and in precise accordance with the finding ordered by the trial judge at the hearing on December 5, 1956, prepared findings, conclusions and an order denying the husband's motion for entry of the final decree. These documents were signed and filed on December 17, 1956.

On the next day, December 18, 1956, the motion to set aside the interlocutory and the property settlement came on for hearing before the same judge. When informed of the nature of the motion the judge expressed the thought that he had no power to set aside the interlocutory and property settlement because they were over a year old. Counsel for the wife called the judge's attention to the fact that he had directed her to file the motion, but the judge repeated that he had no power to grant such a motion. Then the following occurred: ''THE COURT: I denied the fact that he was entitled to a final decree of divorce at that time, but I can't see any reason now why he shouldn't have it. MRS. AXELROD: If he was not entitled to it a week ago, your Honor, why is he entitled to it now? THE COURT: Because he is entitled to it, period. You may take your final decree. MRS. AXELROD: Your Honor, there is no motion; we are not prepared to argue it. THE COURT: There is no argument necessary. I have said he may have his final decree. MRS. AXELROD: We have had no notice of it. THE COURT: You are not entitled to notice. MR. LANGE: We have an affidavit on file, your Honor. THE COURT: That is sufficient for me.''

On that same day, December 18, 1956, an ''order'' was entered in the minutes stating that the motion for a final decree had been granted. On the following day the wife petitioned the other division of this court for a writ of supersedeas and for a temporary stay to restrain the trial court from enforcing or entering that minute order. A temporary stay was granted restraining the court below from any action on the order. The

wife also appealed from the order of December 18, 1956. The husband moved to dismiss that appeal on the ground that it was nonappealable. On February 13, 1957, the other division of this court vacated the stay order, denied the petition for supersedeas, and dismissed the appeal from the order.

While these matters were pending in the appellate court, and on January 31, 1957, the wife noticed a motion for costs and attorney's fees on the appeal then pending. Affidavits by both parties were filed and the motion was heard on February 6, 1957, by a different trial judge than had heard the proceedings of December 5th and 18th, 1956. At this hearing the trial judge was informed about the prior proceedings in the case, but no testimony was formally taken. The wife's counsel informed the court that her client was making $266 a month in take-home pay, while the husband was making over $1,000 a month. A memorandum of argument was filed by each party, and, on March 18, 1957, a minute book entry was made granting the wife's motion and allowing her $100 costs and $500 attorney's fees. Appeal Number 17889, by the husband, is from this order.

In the meantime, after the entry of the orders of the other division of this court on February 13, 1957, on February 25, 1957, the judge who had directed the final decree to be granted entered his order "setting aside order denying motion for entry of final decree of divorce, and for entry of final judgment of divorce nunc pro tunc [December 19, 1956]." A final decree of divorce, *nunc pro tunc* as of December 19, 1956, was entered on this same day. The wife's appeals (No. 17928) are from those orders.

Turning first to the wife's appeals, there are certain general principles that should be mentioned.

Under the provisions of section 132 of the Civil Code the trial court, 12 months after the entry of an interlocutory decree of divorce, may enter a final decree, either on the motion of one of the parties or on its own motion. Rule 20 of the Rules for Superior Courts requires that the moving party must file an affidavit averring, among other things, that since the interlocutory, the parties "have not become reconciled," and "have not lived or cohabited together." (See also *Angell* v. *Angell*, 84 Cal.App.2d 339 [191 P.2d 54].) ▪ If the motion to enter the final is not contested, and if it does not appear that any acts of the parties during the period of the interlocutory have occurred to change the relationship or status of the parties, the entry of the final decree is a mere ministerial

act by the court. But where it is made to appear to the trial court that during the interlocutory events have occurred that may have changed the status or relationship of the parties, such as a condonation and a resumption of marital relations, the entry of the final decree becomes a judicial act. (*Lane* v. *Superior Court*, 104 Cal.App. 340 [285 P. 860].) In such event the court must judicially determine whether or not the parties have become reconciled, or whether the prevailing party in the divorce proceeding has condoned the acts forming the basis of the divorce. If a reconciliation is found by the court, it must deny the entry of the final decree.

A reconciliation occurs when the circumstances show that the parties intended to reunite as husband and wife (*Estate of Abila*, 32 Cal.2d 559 [197 P.2d 10]; *Nemer* v. *Nemer*, 117 Cal.App.2d 35 [254 P.2d 661]), and when there has been an unconditional forgiveness by the prevailing party. (*Angell* v. *Angell*, 84 Cal.App.2d 339 [191 P.2d 54].) Isolated acts of intercourse do not necessarily establish a reconciliation. (*Helbush* v. *Helbush*, 209 Cal. 758 [290 P. 18].) If, in fact, a reconciliation has occurred during the one-year period, the duration of the reconciliation is of no consequence, nor is it relevant that the parties again split up. In such a case neither is entitled to the final decree. (*Chester* v. *Chester*, 76 Cal.App.2d 265 [172 P.2d 924]; *Lane* v. *Superior Court*, 104 Cal.App. 340 [285 P. 860].)

At the December 5, 1956, hearing there was a discussion between the parties and the court as to whether "sexual intercourse" was synonymous with "cohabitation." That is one of the judicially recognized definitions of the term, but the term can also mean living together in the same abode. (*Garibaldi* v. *Garibaldi*, 153 Cal.App.2d 170 [314 P.2d 89].) The real question the trial court must determine on a motion to enter the final decree is whether or not the parties have become reconciled, since the entry of the interlocutory. On this question, the fact they have engaged in sexual intercourse is evidence of a reconciliation, but not conclusive evidence of that fact. The determination of the trial court as to whether or not a reconciliation has occurred, if the evidence or the inferences thereon are conflicting, is binding on the appellate court. (*Nemer* v. *Nemer*, 117 Cal.App.2d 35 [254 P.2d 661]; *Ruggles* v. *Bailey*, 15 Cal.App.2d 555 [59 P.2d 837]; *Slusher* v. *Slusher*, 85 Cal.App.2d 626 [193 P.2d 778]; *Small* v. *Small*, 123 Cal.App.2d 870 [268 P.2d 63].)

In the instant case the evidence was, at least in part, conflicting. The wife testified that the parties had become reconciled and that she had unconditionally forgiven her husband. The husband, while admitting numerous acts of intercourse, denied that there had been a reconciliation. Thus, there certainly is evidence to support the order of December 17, 1956, denying the request to enter the final decree, and probably evidence to support the order of December 18, 1956, granting that request. The basic question presented on the appeals of the wife is whether or not the trial judge had the legal right to change his formal order of December 17, 1956, by simply declaring in his later order that the prior order had been signed ''inadvertently.''

The rule applicable to this problem is easy to state but most difficult to apply. The rule is that the trial court has the power to correct misprisions in its decrees, or other clerical errors. This power exists not only under section 473 of the Code of Civil Procedure, but also independent of that statute. (*Meyer* v. *Porath*, 113 Cal.App.2d 808 [248 P.2d 948]; *Estate of Goldberg*, 10 Cal.2d 709 [76 P.2d 508].) But this power to change or modify its decrees extends only to clerical errors and does not empower the court to thus correct judicial errors. (See cases collected 29 Cal.Jur.2d, § 99, p. 13.) The problem of whether a particular error is ''clerical'' or ''judicial'' is a somewhat difficult one. In *Morgan* v. *State Board of Equalization*, 89 Cal.App.2d 674, 682 [201 P.2d 859], this court discussed the problem as follows: ''From these cases, it appears that the rules to be followed in determining whether an error is clerical or judicial so that the court may have the power to correct it by amendment, are as follows: (1) No serious problem is involved where the correction is to include a matter inadvertently omitted, such as the grounds for granting a new trial, or where the error is plainly clerical. (2) The serious problem arises where the amendment is substantially different from the original order or substantially changes the rights of the parties. In such cases if the court is purporting to correct a clerical error, it should say so, or there should be something in the record to show it. (3) Where there is conflicting evidence as to whether the error was clerical, the reviewing court will probably accept the conclusion of the trial court. (*Bastajian* v. *Brown, supra,* 19 Cal.2d 209 [120 P.2d 9].) If the record shows clearly that there was no clerical error, the recital by the trial court will not be conclusive. (*Estate of Burnett, supra,* 11 Cal.2d 259 [79 P.2d

89].)'' See also *Nathanson* v. *Murphy*, 147 Cal.App.2d 462 [305 P.2d 710].)

One of the leading cases on this subject is *Bastajian* v. *Brown*, 19 Cal.2d 209 [120 P.2d 9]. There the court was presented with the problem of whether the trial judge had the power to vacate an order which had been originally entered, and enter a different order. The court upheld the vacation there involved on the grounds that the declaration by the trial court that the order originally entered did not conform to the judgment of the court, was supported by other evidence in the record. The court stated (p. 215): ''The trial court's finding upon conflicting evidence that a clerical error exists and the nature thereof, is conclusive upon this court.'' The weight thus to be given the trial court's declaration of inadvertence was emphasized in the Nathanson case (p. 469). (See also *Makovsky* v. *Makovsky*, 158 Cal.App.2d 738, 743 [323 P.2d 562].) However, in both the Nathanson and Bastajian cases there was evidence supporting the trial court's declaration independent of the declaration found in the opinion. In the Nathanson case (at p. 470) it is said: ''But in the instant case we are not dependent solely upon the statement of the trial judge that it was his intent not to allow interest. The judge's statement and the testimony of the reporter, reasonably interpreted, are to the effect that the judge not only had such intent, but expressed it at the hearing on March 26, 1953.''[*]

In the present case, the trial judge declared in its later order that the December 17, 1956, order had been entered inadvertently. There is nothing in the record to support the finding of inadvertence except the declaration itself. The balance of the record demonstrates that at the December 5, 1956, hearing the trial judge was unequivocally of the opinion that the final decree should not be entered. At that time, the trial judge directed counsel for the wife to file a motion to set the interlocutory aside, and expressly made and directed the entry of a finding to the effect that the parties had become reconciled. That finding is supported by the evidence. The order of December 17, 1956, was in precise accord with the directions of the trial court made on December 5, 1956. Of course, the trial judge had the legal right and power to change

---

[*]For another case where the record supported the trial court's declaration of inadvertence see *Krouzian* v. *Hagopian*, *ante*, p. 251 [334 P.2d 285], this day filed.

his mind before the entry of the order, and to reweigh the evidence. But the only "evidence" that the trial judge did so is his declaration in his order that the December 17, 1956, order had been entered "inadvertently." When this change of mind occurred does not appear. The record shows that on December 5, 1956, the trial judge believed and declared and found that the final decree should not be entered because the parties had become reconciled. The December 17, 1956, order so provided. There is nothing in the record to show the state of mind of the trial judge on December 17, 1956, except the order itself. There is certainly nothing in the record to show that a change of mind had occurred on or prior to December 17, 1956. We do know that by December 18, 1956, the trial judge had changed his mind. Now he believed the motion to enter the final decree should be granted. On that date he no longer believed that the husband had committed perjury in his affidavit by declaring that the parties had not become reconciled. He no longer believed that the numerous acts of intercourse constituted evidence of reconciliation. He now believed, and so declared, that the parties had not become reconciled. When did this change of mind occur? We do not know. We do know the state of the court's mind on December 5, 1956. We know that the order of December 17, 1956, correctly reflected that state of mind. Prior to December 18, 1956, the trial judge gave no indication that he had changed his mind. On December 18, 1956, he had changed his mind and declared that the order of December 17, 1956, had been entered "inadvertently." There can be no doubt at all that, if the December 17, 1956, order correctly reflected the trial judge's views, and that later the trial judge changed his mind on how the evidence should be evaluated, this would be an attempt to correct a judicial error and was not the correction of a mere clerical one. (*Egan* v. *Egan,* 90 Cal. 15 [27 P. 22] ; *Stevens* v. *Superior Court,* 7 Cal.2d 110 [59 P.2d 988] ; *Maxwell* v. *Perkins,* 116 Cal.App.2d 752 [255 P.2d 10].) On the other hand, if prior to December 17, 1956, the trial judge had reevaluated the evidence and had come to the conclusion that no reconciliation had occurred, as he had the legal right to do, then the December 17, 1956, order was entered "inadvertently" and the correction of December 18, 1956, was the correction of a clerical error. (*Carter* v. *Shinsako,* 42 Cal.App.2d 9 [108 P.2d 27].) Thus the question narrows down to this. A hearing is had. At that hearing the trial judge not only indicates how he has weighed the

evidence, but expressly makes a finding on the vital issue and makes his ruling. The formal order reflecting those views is entered. Then, on the next day, the judge enters a contrary order, declaring that the earlier order had been entered inadvertently. There is nothing in the record to support this declaration of inadvertence except the declaration of the court itself. Everything else in the record points to the fact that the December 17, 1956, order correctly reflected the then views of the trial court. Can the judge, by merely declaring that a prior ruling was entered inadvertently, set that ruling aside and enter a different ruling? Will the appellate court, based on such a declaration alone conclusively presume that the change in mind occurred prior to the entry of the first order? We think not. The sanctity of judicial pronouncements cannot be made to depend on such insecure foundations. Once made, a judicial pronouncement cannot be set aside except as provided by law. Certainly it cannot be set aside by the judge who pronounced it simply changing his mind on the law or the facts. If a prior judgment or order is to be set aside there must be something more in the record to support the order than the mere declaration of the trial judge that the prior order was entered inadvertently. The court had no legal power to correct a judicial error in this fashion. The judge had no legal power to change his mind on the proper interpretation of the evidence after he had made a judicial ruling on that question. ██ In our opinion, before a formal ruling can be set aside and a contrary ruling made on the ground of inadvertence, there must appear in the record something to support the finding of inadvertence other than the declaration of the court to this effect. The record here discloses no such showing. ██ We are of the opinion that the trial court was attempting to correct in this fashion a judicial ruling and not trying to correct a mere clerical error. This it had no power to do. The orders appealed from must be reversed.

We turn now to a consideration of the husband's appeal. To understand his contentions several dates must be emphasized:

*December 18, 1956*—the trial judge enters an order to the effect that the motion for the entry of the final decree should be granted.

*December 19, 1956*—the wife applies to the appellate court for a writ of supersedeas and secures a temporary stay re-

straining the enforcement of the order. The wife also appealed from the order of December 18, 1956.

*January 31, 1957*—the wife noticed a motion for costs and attorney's fees on that appeal.

*February 6, 1957*—motion heard by court.

*February 13, 1957*—the appellate court denied supersedeas, dissolved the stay order, and dismissed the appeal.

*February 25, 1957*—orders entered from which the wife has successfully appealed.

*February 27, 1957*—wife files notice of appeal from those orders.

*March 18, 1957*—court enters order allowing costs on appeal.

The husband contends that the court had no authority to entertain the motion for costs and fees, even though the appeal was then pending, because of the stay order issued on December 19, 1956, in connection with the petition for a writ of supersedeas. That stay order provided: "It Is Hereby Ordered that the Superior Court of the City and County of San Francisco, State of California, and the Clerk of said Court desist and refrain from taking any further proceedings therein and from enforcing or attempting to enforce or enter said order, and that all proceedings of said Superior Court on said order be and the same are hereby stayed until further order of this Court . . ."

This stay remained in effect until February 13, 1957, when it was vacated. The wife filed her motion for costs and fees on January 31, 1957, and the motion was heard on February 6, 1957. On those dates the stay order was still in effect. It is the theory of the husband that the stay order restrained the trial court from taking any action in the proceeding relating to the application for the final decree, and therefore it had no power to entertain the motion for costs and fees.

The problem thus presented depends, obviously, upon the proper interpretation of the stay order. Properly interpreted we do not think that the stay order prohibited any and all action by the trial court in connection with the proceeding. It was issued in connection with an application for supersedeas which was aimed at preventing the entry of the final decree. In our opinion that is what the stay order restrains. It is true that the stay order states that it restrains the trial court from "any further proceedings" in the matter, but that language must be read in the light of the balance of the order which relates only to the entry of the final judgment.

We cannot assume that the appellate court, by its stay order, was intending to restrain proceedings that were in no way connected with the entry of the final decree. We cannot assume that the appellate court, to protect its jurisdiction while it considered that application, intended to do anything more than restrain action that might affect that jurisdiction. Obviously, there was no necessity in order to protect its jurisdiction for the appellate court to restrain a purely collateral proceeding such as a motion for costs and fees. We think that it did not do so.

The husband next contends that, by the terms of the property settlement agreement incorporated into the interlocutory decree, the wife waived her rights to costs and fees on appeal.

Of course, the trial court, in a divorce proceeding, normally has the power to grant costs and fees, this power continuing during the pendency of an appeal. (Civ. Code, § 137; *McCahan* v. *McCahan*, 47 Cal.App. 173 [190 P. 458].)

It is equally well settled, however, that the wife may, in a settlement agreement, waive her future right to costs and fees. (*Fox* v. *Fox*, 42 Cal.2d 49 [265 P.2d 881]; *Viera* v. *Viera*, 107 Cal.App.2d 181 [236 P.2d 632]; *Spreckels* v. *Spreckels*, 111 Cal.App.2d 529 [244 P.2d 917].) If a proper waiver has been made the trial court is without legal authority to make an award of costs and fees. (*Patton* v. *Patton*, 32 Cal.2d 520 [196 P.2d 909]; *Grolla* v. *Grolla*, 151 Cal.App.2d 253 [311 P.2d 547].)

The husband contends that in the property settlement here involved the wife waived her right to such costs and fees. In this respect the husband relies on several provisions of the agreement, the strongest in his favor being Paragraph IV, which reads as follows: "Second party shall pay to First Party the sum of $600.00 at the rate of $100.00 per month conmmencing November 22, 1955, in full settlement and satisfaction of her rights in and to any property that is now or may hereinafter be claimed to be community property and in full satisfaction of her past, present and future rights to alimony, support or maintenance, it being understood that such payment, is intended to forever settle and adjust the property rights and financial obligations of each of the parties hereto with each other in all respects."

While this provision, in our opinion, does not amount to a clear-cut waiver of costs and fees on appeal, the wife concedes that, for the purposes of this appeal, if the property

settlement is legally effective, the trial court had no power to award costs and fees on appeal. It is her theory that the evidence shows a reconciliation, and that such reconciliation normally effects a rescission of the property settlement agreement. (*Lamb* v. *Lamb*, 131 Cal.App.2d 489 [280 P.2d 793]; *Harrold* v. *Harrold*, 100 Cal.App.2d 601 [224 P.2d 66]; *Lloyd Corp., Ltd.* v. *Industrial Acc. Com.*, 61 Cal.App.2d 275 [142 P.2d 754].)

Assuming that the property settlement agreement was a waiver of the right to costs and fees, as the wife concedes (although we are not certain it is), the question then remains whether, under the facts here involved, the wife was entitled to such an award. It must be remembered that, according to the order of December 17, 1956, the husband had been denied the right to a final decree because there had been a reconciliation. If there was a reconciliation the property settlement including, of course, the waiver, was set aside. The trial court on December 18, 1956, ordered the final decree to be entered. The wife appealed, and, as we have already held in this opinion, the appeal is meritorious. But regardless of the merits of that appeal, it is obvious that whether the property settlement is still effective (and therefore whether the claimed waiver is effective) depends upon which order of the trial court is held to be effective. The wife is challenging one of the orders, contending that because of the reconciliation, the property settlement, and therefore the waiver, is no longer effective. When the wife in good faith challenges the continued existence of the property settlement, or its validity, regardless of whether she is right or wrong, where she is unable to finance the appeal, she must have suit money to prosecute the appeal or she will lose her right to challenge the continued existence of the agreement.

The problem is essentially similar to the one presented in *Locke Padden* v. *Locke Padden*, 194 Cal. 73 [227 P. 715]. There the wife brought an action to set aside a property settlement agreement on the ground of fraud. In the property settlement she had waived her right to costs and fees. She was held entitled to costs and fees on appeal in spite of such waiver, because she was, in good faith, challenging the continued existence of the agreement and waiver. That is precisely what is being done in the present case, and for similar reasons it should be held that the award of such costs and fees was proper. (See also *Vishner* v. *Vishner*, 125 Cal.App.2d 667 [271 P.2d 68].)

■ It is also urged by the husband that the evidence does not support the challenged award. This contention is without merit. The wife's affidavit in support of her motion avers her inability to pay such costs and the ability of the husband to pay them. At the hearing, although evidence was not formally produced, counsel for the wife stated to the court that his client was earning $266 a month and had two children by a prior marriage to support, and that the husband was earning in excess of $1,000 a month. The husband did not see fit to challenge these statements. He contends that he was precluded from doing so, but the record shows that he elected not to produce any evidence on the issue. While the practice is to award such costs and fees only after a hearing (1 Armstrong, Family Law, 301), and such fees can only be awarded after the contesting party has had an opportunity to be heard (*Hite* v. *Hite*, 124 Cal. 389 [57 P. 227, 71 Am.St.Rep. 82, 45 L.R.A. 793]), there can be no doubt of the propriety of making such an award based upon the showing made in the affidavits alone, at least where, as here, the counsel for the contesting party told the court that he had decided ''to let well enough alone.'' (*Armstrong* v. *Armstrong*, 81 Cal.App.2d 322 [183 P.2d 905]; *Peyre* v. *Peyre*, 79 Cal. 336 [21 P. 838]; see discussion 16 Cal.Jur.2d 476, § 185.)

In Number 17928 the orders appealed from are reversed.

In Number 17889 the order appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.

Petitions for a rehearing were denied February 20, 1959, and the petition of plaintiff and appellant Daniel J. Nacht for a hearing by the Supreme Court was denied March 18, 1959.