[L. A. No. 27533.   In Bank.   Nov. 18, 1964.]

Estate of LOULA BURNS DOANE, Deceased. UNITED CALIFORNIA BANK, as Trustee, etc., Petitioner and Respondent, v. BETTY BURNS WOODY et al., Contestants and Appellants.

Calvin L. Helgoe and John K. Ford for Contestants and Appellants.

Stephens, Jones, La Fever & Smith and Byron O. Smith for Petitioner and Respondent.

McCOMB, J.—Two beneficiaries of testamentary trusts appeal from a portion of the order settling the trustee's final account and distributing the trust estate.

*Facts*: Loula Burns Doane died testate on July 14, 1952. She gave to her trustee $22,000, out of which $6,000 was to be paid to Harold Lloyd Burns at the end of 10 years, with interest at 3 per cent from the date of her death (hereinafter called "Trust A"). Her will provided: "In case of his death before ten years or if he is still childless—without issue of his own body at the end of the ten years, he is to receive nothing."

The will also provided that monthly payments from this trust be made to Betty Burns Woody, Leo Henry Burns, and Robert Henry Burns, and that if Betty, Leo, Robert, and Harold survived 10 years "and Harold can qualify," the balance remaining in the trust should be divided among the four beneficiaries in designated proportions.

The testatrix created another trust of one third of the residue of her estate in favor of Harold (hereinafter called "Trust B") "to be held in trust for him . . . for a term of ten years, after which it and the accumulated interest is to be paid to him . . . . But in case said Harold Loyd [*sic*] Burns dies before the end of the ten years or is still childless— without issue of his body, his one third (⅓) is to be divided equally between Betty Burns Woody, Leo Henry Burns and Robert Henry Burns."

The petition for preliminary distribution filed by the executors' attorney in June 1954 asked that Trust B terminate on July 14, 1962, and the corpus and accumulated interest "be distributed to Harold Lloyd Burns if then living. Should said Harold Lloyd Burns die prior to July 14, 1962, leaving no issue of his body, the said Trustee shall distribute the principal and accumulated income . . . in equal shares to Betty Burns Woody, Leo Henry Burns and Robert Henry Burns."

According to the petition, Harold was to receive the corpus and accumulated income of Trust B at the end of 10 years

even though he was childless at that time. This was contrary to the terms of the will.

The petition, however, did follow the terms of the will as to Trust A, stating that, as to the $6,000 plus interest, "should said Harold Lloyd Burns die prior to July 14, 1962, or if he is then without issue of his body, he shall receive nothing."

The order for preliminary distribution signed on July 7, 1954, followed, at least as to Harold, the exact provisions of the executors' petition filed the preceding month. Apparently no one detected the error as to Trust B until after the trustee's final account and petition for distribution was filed in October 1962. Betty Burns Woody and Leo Henry Burns objected to the final account and made a motion for an order to be entered *nunc pro tunc* correcting the decree of July 7, 1954.

At the hearing on correction of the decree for preliminary distribution, contestants' attorney asked Judge Victor R. Hansen, who signed the decree, "In entering that decree . . . was it your intention to direct distribution in accordance with the terms of the will?" He responded, "Very definitely." Judge Hansen's attention then was called to the portion of the will directing that Harold take nothing if he remained childless at the end of the 10-year period. The judge replied that he had no independent recollection of the proceedings, and stated: "I have since the time read the will and have also read the order. And I notice the order had been approved by Commissioner Donatelli. And all I can say is that I am sure I had no intention of decreeing anything contrary to the will, but I obviously have no independent recollection."

Judge Hansen indicated that he had many such decrees to sign but that he still tried to read them before he signed them. He testified: "Obviously we put a lot of confidence in the Commissioners. I did read them, but there is a difference between reading and studying."

When asked if the failure to include the exact provision of the will in the order for partial distribution was intentional or erroneous, Judge Hansen said: "After having gone through the will, I would not have issued the order contrary to the will." He was then asked: ". . . does the decree as signed and entered express the decision you intended to make?" He answered, "I'd say no."

The trial court later remarked: ". . . I am satisfied that it was probably inadvertent." Judge Hansen added: "I followed the petition."

In settling the trustee's final account and distributing the estate, the court found that Harold was living but had no issue on July 14, 1962, and had had no issue prior thereto; that he was not entitled to share in any manner in the distribution of Trust A; that although the decree of preliminary distribution varied from the terms of the decedent's will, any errors therein were judicial and could not be corrected; and it ordered that the balance in Trust B be distributed to Harold.

Question: *Was the error in the order for preliminary distribution signed on July 7, 1954, a clerical or a judicial error?*

The error was clerical. These rules are here applicable:

(1) Independent of statute, a trial court has power to correct mistakes and to annul orders and judgments inadvertently or improvidently made. A trial court has power to vacate judgments and orders inadvertently made which are not actually the result of the exercise of judgment. It has no power, however, having once made its decision after regular submission, to set aside or amend judicial errors except under appropriate statutory proceedings. (*Bastajian* v. *Brown,* 19 Cal.2d 209, 214 [1] [120 P.2d 9].)

(2) In determining whether an error is clerical or judicial, great weight should be placed on the declaration of the judge as to his intention in signing the order. (*Bastajian* v. *Brown, supra,* at p. 215 [3].)

(3) The distinction between a clerical error and a judicial error does not depend so much on the person making it as it does on whether it was the deliberate result of judicial reasoning and determination. (*Estate of Goldberg,* 10 Cal.2d 709, 715-716 [4] [76 P.2d 508]; *Stevens* v. *Superior Court,* 7 Cal.2d 110, 112-114 [59 P.2d 988]; *Wilson* v. *Wilson,* 109 Cal.App.2d 673, 674 [1] [241 P.2d 281].)

Applying the foregoing rules to the facts in the instant case, it is apparent that Judge Hansen's general intent to conform to the terms of the will compels a determination that the error was clerical and not judicial. (Cf. *Estate of Careaga,* 61 Cal.2d 471, 474 [4] [39 Cal.Rptr. 215, 393 P.2d 415].)

Since the will clearly stated that Harold was not to take if he was childless at the end of the 10-year period, and Judge Hansen testified that he had no intention of decreeing anything contrary to the will, we believe that the error cannot reasonably be attributed to the exercise of judicial consideration or

discretion and that Judge Hansen did not "interpret" the will when he signed the order for preliminary distribution which contained an error inadvertently made by the executors' attorney.

The portions of the order from which the appeal is taken are reversed.

Tobriner, J., Peek, J., Mosk, J., and Schauer, J.,* concurred.

PETERS, J.—I dissent.

The majority opinion correctly states the facts, and correctly states that the only question involved is whether "the error in the order for preliminary distribution signed on July 7, 1954" was "a clerical or a judicial error." The opinion answers that question by holding that the error was clerical, and therefore subject to correction by a *nunc pro tunc* order made years after it had become final. With that conclusion I cannot agree. The error was clearly judicial.

We have recently reviewed the law on this subject in *Estate of Careaga,* 61 Cal.2d 471 [39 Cal.Rptr. 215, 393 P.2d 415]. There, too, the decree did not follow the words of the will. The testimony of the probate judge who had signed the original order was remarkably similar to that of the judge who had done so in the present case. The court held that the "error" could be corrected by a *nunc pro tunc* order, not because it was clerical, but because the two decrees meant the same thing. If the two decrees, as here, had meant different things, the error would have been judicial. That is obvious from the opinion. In that case the court stated (p. 474) : " 'The function of a *nunc pro tunc* order is merely to correct the record of the judgment and not to alter the judgment actually rendered—not to make an order now for then, but to enter now for then an order previously made. The question presented to the court on a hearing of a motion for a *nunc pro tunc* order is: What order was in fact made at the time by the trial judge?' (*Smith* v. *Smith,* 115 Cal. App.2d 92, 99-100 [251 P.2d 720].) 'While a clerical error is no longer to be limited to only those made by a clerk [citations], nevertheless, clerical errors do not include those made by the court because of its failure to correctly interpret the law or apply the facts. [Citations.] It is only when the form of the judgment fails to coincide with the substance thereof,

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

as intended at the time of the rendition of the judgment, that it can be reached by a corrective *nunc pro tunc* order.' (*Estate of Eckstrom,* 54 Cal.2d 540, 545 [7 Cal.Rptr. 124, 354 P.2d 652].) 'If the record shows clearly that there was no clerical error, the recital by the trial court will not be conclusive.' (*Morgan* v. *State Board of Equalization,* 89 Cal.App.2d 674, 682 [201 P.2d 859].)''

Under these rules, the error was clearly judicial. The two orders meant different things, that is, the *nunc pro tunc* order altered the final judgment. The order made in 1954 was precisely the order the probate judge ordered entered. No one misconstrued the judge's order or intent. It was simply a case of the trial judge entering an order that followed the precise terms of the petition without comparing it with the terms of the will. The court simply failed to interpret correctly the facts. Such an error is judicial. The error of the judge cannot be corrected in such a fashion.

The necessary result of the majority opinion will be to upset decrees that have been acted on by the parties after they have been final for many years. In every case where the provisions of a decree of distribution are different from those of the will, and the original probate judge testifies that he really did not mean to sign the order but erroneously believed the order followed the will, the decree now will be subject to correction by a *nunc pro tunc* order. In the present case only a relatively few years elapsed between the two orders, but the rule announced applies where 20 or more years have elapsed. In such a fashion the finality of decrees of distribution will have been abolished.

It is true that the result reached by the majority gives effect to the intent of the testator, a result to be desired, but it also destroys the finality of decrees of distribution in every case where it appears that the probate judge signed a decree he should not have signed. The law provides a remedy for such errors—an appeal. After the time for appeal has elapsed only chaos can result from destroying the finality of the decree.

I would affirm the portions of the order appealed from.

Traynor, C. J., concurred.