[Civ. No. 37232. Second Dist., Div. Five. July 13, 1971.]

RUTH S. DENTON, Plaintiff, Cross-defendant and Respondent, v. ROBERT B. DENTON, Defendant, Cross-complainant and Appellant.

## COUNSEL

John N. Frolich for Defendant, Cross-complainant and Appellant.

Ross & Saunders and E. Loyd Saunders for Plaintiff, Cross-defendant and Respondent.

## OPINION

**AISO, J.**—In this action for separate maintenance and cross-action for divorce, the trial court found both parties guilty of extreme cruelty.[1] It granted to wife the right to live separately and apart and to husband an interlocutory judgment of divorce. The findings of fact and conclusions of law were filed on July 23, 1969, the interlocutory decree was entered July 25, 1969, and the final judgment for divorce on the cross-complaint on October 2, 1969.

By a post-judgment order, filed April 15, 1970, the trial court corrected parts of its conclusions, the interlocutory decree, and the final judgment (insofar as it incorporates the portion of the interlocutory decree thus amended) which pertain to the payment of the wife's attorney's and accountant's fees by adding to the preexisting provision: "In the event the proceeds of such sale are insufficient, the Respondent [husband] is ordered to pay directly to counsel for plaintiff the attorney's fees and accountant's fees set forth above."

The portion of the interlocutory decree thus amended read:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED as to the following securities and property:

1. 116 shares of Western Oil Fields . . . ;

2. 100 shares of Arden Mayfair . . . ;

3. The Abernathy Note secured by a Deed of Trust—that they shall be sold and the proceeds of the sale awarded as follows:

a. $1,433.00 to [husband] to equalize his share of community property;

b. $3,500.00 to Ross and Saunders, [wife's] counsel, as additional attorney's fees;

c. $2,000.00 to [wife's] accountant, Henry Serlin, for accountant's fees;

d. The balance shall be divided equally, to wit: one-half to the [wife] and one-half to the [husband]."

The conclusion of law in question is similarly worded.

---

[1]We ascertain this fact by reference to the trial court file which we have had lodged with this court, since the findings were not made in accordance with the California Rules of Court, rule 232(e). The finding of mutual cruelty appears to have been the basis of what appears to be an attempt to achieve an equal division of the community property. (Cf. *De Burgh* v. *De Burgh* (1952) 39 Cal.2d 858 [250 P.2d 598].)

Husband appeals from the order (Code Civ. Proc., § 904.1, subd. (b)), contending that it is an illegal attempt to correct *nunc pro tunc* a judicial rather than a clerical error.

## I.

By its minute order of June 24, 1969, the trial court made findings concerning the assets in the possession of the two parties, finding some to be community, others to be the separate property of either wife or of husband, and also certain securities (shares of stock) standing in the joint names of husband and wife to be in fact the property of husband's mother, Tirzah B. Denton, who owned the whole beneficial interest. Securities listed as belonging to Tirzah B. Denton were:

500 [B]emis Bros. Bag Co.

212 Lear Siegler

 50 Great Northern Ry.

 50 Chesapeake and Ohio Ry.

The order further provided that husband and wife were to execute any documents necessary to place the legal title in those securities in the name of Tizrah B. Denton, or her nominee.

Among the assets found to be community property, the minute order listed the following securities:

| | |
|---|---|
| 100 Suburban Gas Co. | (No valuation given) |
| 116 Western Oil Fields | (No valuation given) |
| 100 Republic Steel | (No valuation given) |
| 100 Arden Mayfair | (No valuation given) |

It also listed an "½ interest in and to a certain promissory note commonly referred to as the Abernathy note [valued at] $1,000."

The minute order further provided: "The community property securities are ordered sold and the proceeds of the sale are awarded as follows: [¶] $1,537 to [husband] to equalize his share of the community property previously awarded; $3,500 to [wife's] counsel as and for attorney's fees; $2,000 to [wife] to apply as fees for her accountant and the balance is to be divided equally between the parties."

Wife's counsel was ordered to prepare findings and conclusions, if requested, and the decree and to submit same to husband's counsel for approval as to form before submitting them to the court. Wife's counsel

prepared proposed findings of fact and conclusions of law and the inter-locutory decree, providing, inter alia, for the sale of the community property securities (shares of stock) as listed in the minute order and for the application of the proceeds from their sale as directed by the minute order. However, at the conference to settle the findings and conclusions, the trial court deleted from the list of community securities to be sold the 100 shares of Suburban Gas and 100 shares of Republic Steel[2] and inserted in lieu thereof the community interest in the Abernathy note. The shares of stock thusly deleted were worth $11,910.50, while the discounted value (face value $1,000) of the Abernathy note was around $750. Thereafter, husband's counsel (apparently upon the trial court's directions) prepared new findings and conclusions, which the court adopted (after reducing the amount to be paid to husband from the proceeds of sale from $1,537 to $1,433) as and for its decision. The 100 shares of Suburban Gas and 100 shares of Republic Steel were now listed in the findings and conclusions adopted by the court as stocks belonging to husband's mother, Tirzah B. Denton, in addition to those previously listed in the minute order of June 24, 1969; and those shares of stock were deleted from the list of com-munity assets.

The interlocutory decree was entered on July 25, 1969, as earlier noted, and the clerk on July 29, 1969, gave notice of entry of the decree. Both parties moved for a new trial. Among other things,[3] wife in her declaration supporting her motion pointed out that the assets ordered to be sold were worth only a fraction of the attorney's fee of $3,500 and the accountant's fee of $2,000. In the declaration supporting husband's motion for new trial, it was argued that wife was bound by her pleadings and answer to inter-rogatories that 200 shares of Suburban Gas and 200 shares of Republic Steel were community property, thereby rendering the trial court without jurisdiction to determine the character of 100 shares of each of those stocks to be wife's separate property, in contravention to the aforementioned ad-missions by the wife. The court denied the motions,[4] but for reasons un-explained by the record neither party appealed from the interlocutory decree to have the order of denial reviewed, which explains the entry of final judgment for divorce on the cross-complaint on October 2, 1969.

Among the other findings and/or conclusions relevant to the issue before

---

[2]These are different shares than the 100 shares of Suburban Gas and 100 shares of Republic Steel found to be wife's separate property. In all, 200 shares of each corporation were involved in the proceedings.

[3]Wife also assigned the fact that she had discovered that husband's mother, Tirzah B. Denton, had died on July 16, 1969, nine days before the entry of the interlocutory decree.

[4]Husband's motion appears to have been denied by operation of law. No express disposition thereof appears in the record.

this court are the following: (1) that wife is in need of and entitled to receive alimony from husband, but that husband has the ability to pay only $1 per month; and (2) that wife does not have sufficient funds to pay reasonable fees to her counsel for his services rendered and to be rendered or to pay court costs, but that husband does have the ability to pay reasonable amounts for such items as she alleged in paragraph VII of her complaint. Bottomed on the foregoing, the court in its interlocutory decree awarded wife $1 per month alimony until further order of court and made the provision for the payment of her attorney's fees and accountant's fees earlier set forth. The balance of the decree dealing with financial matters (aside from that part dealing with the securities found to belong to husband's mother) is set forth in the margin.[5]

In the post-judgment order of April 15, 1970, the judge, who was the same one who presided over the original trial proceedings, recites that "The Court finds that it has committed clerical error in the signing and filing of the findings of fact, conclusions of law, and the interlocutory and final judgments herein . . . in that it was the intent of the Court to make said judgments reflect an obligation of the Respondent [husband] to pay costs and attorney's fees in the amounts set forth in said conclusions of law . . . , subject only to his right to apply against such sums the items of community property set forth. It was further the intent of the Court that in the event of any deficiency resulting from the sale of such community

---

[5](A) The trial court found the following assets to be the separate property of the wife: (1) 100 shares of Suburban Gas Co., certificate number L12793; (2) 100 shares of Republic Steel Co., certificate number C67714; (3) second trust deed note commonly referred to as the Dopp note, which is the second trust deed note on the real property located at 499 Sandalwood Drive, El Centro, California; (4) one-half interest in the Business Men's Life insurance policy on the life of [wife] (the other one-half being community property).

(B) The trial court found the following assets to be the separate property of the husband: (1) 99 shares of Security Insurance Company of Hartford; (2) one-half interest in three policies of life insurance on the life of [husband] in New York Life (the other one-half being community property).

(C) It awarded the following community property to the wife: (1) real estate and residence at 3676 Amesbury Road, Los Angeles (valued at $45,000); (2) household furniture and furnishings in her possession (valued at $2,500); (3) 1963 Chrysler automobile (valued at $900); and (4) two Forest Lawn burial niches (valued at $174).

(D) The husband was awarded the following from community assets: (1) all of his business enterprises (valued at $45,000); (2) furniture and furnishings in his possession (valued at $500); and (3) cash in savings and loan accounts $207.58.

The husband was further ordered to pay wife $200 received by him as four payments on the note secured by the Sandalwood property found to be wife's separate property, and $987.97 held by him for the benefit of wife's mother.

The wife was ordered to pay all debts incurred by her except those which the court had ordered husband to pay, prior to trial.

Disposition of the community interests in the various life insurance policies was taken care of by stipulation of the parties.

property, the obligation for such costs and fees should be paid by Respondent [husband]."[6]

The minute order of April 9, 1970, of similar tenor cites *Wilson* v. *Wilson* (1952) 109 Cal.App.2d 673 [241 P.2d 281] and *Estate of Goldberg* (1938) 10 Cal.2d 709 [76 P.2d 508] as authority for the trial court's order.

The wife's notice of motion for correction of the error stated that the sale of the securities (shares of stock and note) ordered to be sold for the payment of the attorney's and accountant's fees had netted a total sum of $2,120 (116 shares of Western Oil Fields $100; 100 shares of Arden Mayfair $1,270; and the Abernathy note $750).

## II.

"Independent of statute, a trial court has power to correct mistakes and to annul orders and judgments inadvertently or improvidently made. A trial court has power to vacate judgments and orders inadvertently made which are not actually the result of the exercise of judgment. It has no

---

[6]Excerpts from the remarks of the trial judge at the conclusion of the oral hearing on the motion are set forth in the reporter's transcript as follows:

"THE COURT: In my view of the case—and I went back and read all. of the rather lengthy motions that were made after the trial of this matter in regards to correcting or making corrections and other things; and I have no doubt as to what the order was supposed to mean and say then. I don't think it means and says what I intended to make it mean and say. I don't think there is any question about that. [¶] For that reason, I think the order should be corrected. [¶] You have raised the question that there is no jurisdiction to make the correction. I think I do have jurisdiction to make the correction; and I think it should be corrected. And I think it should be corrected to reflect that the Court made a clerical error. . . . [¶] It is a clerical error, as distinguished from a judicial error, which cannot be corrected. And I do think I have jurisdiction to correct a clerical error. [¶] It was with the obvious intent, when I made the order, in dividing the property, that certain assets would be awarded to each: the business to the husband, and the house to the wife. . . . [¶] I then provided that certain assets of property were to be sold, and from the proceeds to that sale, fees and costs were to be paid. And it was my assumption, of course, in making the order, that there would be sufficient funds to pay the costs. I didn't intend, if there weren't sufficient funds, that there wouldn't be any payment, obviously. It would have been an idle kind of order to make. [¶] And so I think that the various documents, including the findings, the conclusions of law, I think is the first document they are contained in, together with the interlocutory judgment and the final judgment, as it incorporates the interlocutory judgment, and it should be corrected by adding in the appropriate place—and they appear at different places, which I will define in a minute order. They appear at different places, but basically, after the phrase in all of those documents which says 'The balance should be divided equally, to wit, one-half to the plaintiff and one-half to the defendant'—it shall say that 'In the event the sums are not sufficient, the respondent is ordered to pay to counsel for petitioner any balance of the sums above ordered,' or language to that effect. I think that is the only fair way to treat it. It results in the fact that he is going to pay the fees; the community is not going to pay all of them. I understand that. But I think that is the only fair thing to do, and I do think that I made the error."

power, however, having once made its decision after regular submission, to set aside or amend judicial errors except under appropriate statutory proceedings." (*Gill* v. *Epstein* (1965) 62 Cal.2d 611, 614-615 [44 Cal. Rptr. 45, 401 P.2d 397]; accord: *Estate of Doane* (1964) 62 Cal.2d 68, 71 [41 Cal.Rptr. 165, 396 P.2d 581]; *Bastajian* v. *Brown* (1941) 19 Cal. 2d 209, 214 [120 P.2d 9].) As stated by Justice Peters, then a Presiding Justice of the Court of Appeal, "The rule applicable to this problem is easy to state but most difficult to apply." (*Nacht* v. *Nacht* (1959) 167 Cal.App. 2d 254, 262 [334 P.2d 275].) "If the record shows clearly that there was no clerical error, the recital by the trial court [that the error was clerical] will not be conclusive." (*Nacht* v. *Nacht, supra,* at p. 262.) ▆ It is the established rule, however, that "[i]n determining whether an error is clerical or judicial, great weight should be placed on the declaration of the judge as to his intention in signing the order." (*Gill* v. *Epstein, supra,* 62 Cal.2d 611, 615; *Estate of Doane, supra,* 62 Cal.2d 68, 71.) "The facts within the personal knowledge of the judge may be considered, and in vacating or correcting a clerical error or mistake he may give effect of his own recollection. The declaration in the order vacating the judgment has a direct bearing on the existence of such error. . . . The signing of the findings does not necessarily establish that an error in a judgment is a judicial one." (*Bastajian* v. *Brown, supra,* 19 Cal.2d 209, 215.) ▆ The critical distinction between a judicial and clerical error is whether it was "the deliberate result of judicial reasoning and determination." (*Gill* v. *Epstein, supra,* 62 Cal.2d 611, 615; *Estate of Doane, supra,* 62 Cal.2d 68, 71.) "The trial court's finding upon conflicting evidence that a clerical error exists and the nature thereof, is conclusive upon [the appellate] court." (*Bastajian* v. *Brown, supra,* 19 Cal.2d 209, 215; accord: *Nacht* v. *Nacht, supra,* 167 Cal.App.2d 254, 263.) Even *In re Candelario* (1970) 3 Cal.3d 702 [91 Cal.Rptr. 497, 477 P.2d 729], cited by appellant's counsel, recognizes at page 705 that an error is clerical if "the record clearly demonstrates that the error was not the result of the exercise of judicial discretion."

### III.

▆ Contrary to the situation presented in *Nacht* v. *Nacht, supra,* 167 Cal.App.2d 254, cited by appellant, here the trial court's finding that the error was clerical finds support in the record dehors its declaration in the post-judgment order. The minute order of June 24, 1969, may be consulted to ascertain the trial court's intended order. (*Bastajian* v. *Brown, supra,* 19 Cal.2d 209, 215.) That minute order reflects that the court made no order covering the contingency where the community securities (shares of stock) ordered sold would be insufficient to pay off the wife's attorney's and accountant's fees, because included in the securities to be sold, were

the 100 shares of Suburban Gas and 100 shares of Republic Steel (other than those found to be the separate property of the wife). These stocks were worth $11,910.50. When the court signed the findings and conclusions, these stocks had been removed from the securities to be sold and a note worth $750 (after discount) on the open market was inserted in their place, and the shares thus removed were added to the shares of stock found to be beneficially owned by husband's mother, Tirzah B. Denton. Inadvertently, the court failed to add a sentence to cover this change in condition. The inadvertence was called to the attention of the trial judge by the wife in her motion for new trial. Since this was not the sole ground for her motion, we do not know whether the court reconsidered this matter in denying her motion on September 29, 1969, the 60th legal day from the mailing of the notice of entry of judgment by the clerk.[7] (Code Civ. Proc., § 660.) It is clear, however, that the trial court did not intend that wife should shoulder payment of these fees, because in its findings it found that wife did not have sufficient funds to pay reasonable counsel fees or court costs, but that husband did have the ability to pay reasonable amounts for such items.

Under the foregoing circumstances, this court is bound by the trial court's finding that the error was clerical; and being clerical, the error was legally corrected by the post-judgment order. (Cf. *Smith* v. *Smith* (1952) 115 Cal.App.2d 92, 99-100 [251 P.2d 720].) The trial court's failure to provide for the contingency in question cannot be characterized as a "deliberate result of judicial reasoning and determination." The sentence added, however, appears to have been intended to read and should be construed by this court to mean as if it read: In the event the proceeds of such sale are insufficient the respondent (husband) is ordered to pay directly to counsel for plaintiff the *unpaid balance of the* attorney's fees and accountant's fees set forth above." As so construed the order appealed from should be affirmed.

### IV.

The post-judgment order of April 15, 1970, re attorney's and accountant's fees, is affirmed. Each party is to bear his or her own costs on appeal.

Kaus, P. J., and Stephens, J., concurred.

---

[7]September 27, 1969, fell on a Saturday.