[Civ. No. 25480.   Second Dist., Div. One.   Feb. 21, 1962.]

Estate of HARRY H. HARRIS, Deceased. EVA P. HARRIS, as Executrix, etc., Plaintiff and Appellant, v. BEEBE HARRIS, Defendant and Respondent.

580

Sullivan, Roche, Johnson & Farraher and Jules E. Delwiche for Appellant.

Schramm, Raddue & Seed, Vaughan, Brandlin & Baggot, Loeb & Loeb and Herman F. Selvin for Respondent.

WOOD, P. J.—Appeal (1) from an order amending *nunc pro tunc* a decree of final distribution, and (2) from the decree of final distribution as so amended.

Harry H. Harris died on August 14, 1955. His will, dated May 29, 1951, was admitted to probate in Santa Barbara County on August 29, 1955. The will provided, in part, as follows:

"FOURTH: In conjunction with my brothers, JOHN L. HARRIS and LOUIS S. HARRIS, and my aunt, ELEANOR HARRIS, I own an interest in the HARRIS PROPERTIES and in the HARRIS SECURITIES. The HARRIS PROPERTIES is the designation applied to the real property in Santa Barbara County owned by the HARRIS family for many years. LOUIS S. HARRIS has registered in his name, or in his possession, securities held for the benefit of the others, as to which he has executed a Declaration of Trust denominating it HARRIS SECURITIES.

"I hereby give, devise and bequeath my interest in the HARRIS PROPERTIES and HARRIS SECURITIES to my wife, BEEBE HARRIS, to be held by her until her death or remarriage, whichever event is the first to occur. In the event she should desire to sell or encumber her interest in said property, she shall first be required to give my brothers, JOHN L. HARRIS and LOUIS S. HARRIS, the first opportunity to purchase, if offered for sale, or to receive an encumbrance on the property in consideration of the money loaned.

"FIFTH: I hereby give, devise and bequeath to my brothers, JOHN L. HARRIS and LOUIS S. HARRIS, all of my interest in the HARRIS PROPERTIES and the HARRIS SECURITIES subject, however, to the interest therein herein given to my wife.

"SIXTH: I hereby give, devise and bequeath the residue of my estate to my wife, BEEBE HARRIS."

Louis S. Harris, one of the brothers who was named a beneficiary in Harry's will, died on March 17, 1955 (about five months before Harry died).

John L. Harris, the other brother, was appointed executor of Harry's will.

The report of the inheritance tax appraiser recited (1) that the interest which passed to Beebe Harris (wife), under

Harry's will, was a life estate in Harry's interest in the Harris Properties and Harris Securities (referred to in the will), and also the residue of Harry's estate; and (2) that the interest which passed to John L. Harris (brother) was the remainder interest in the Harris Properties and Harris Securities.

On December 17, 1956, the court made an order approving the inheritance tax report, and stating the names of the persons to whom the property "passed from decedent," the value of their interests, and amount of taxes to be paid. Under that order "no tax" was payable by Beebe Harris; and the amount payable by John L. Harris was $7,068.51. He paid that amount.

On January 3, 1957, John L. Harris, as executor, filed a petition for preliminary distribution wherein he alleged that under the will of decedent (Harry H. Harris) a cash bequest was left to each of his two daughters (a total of $5,500); that certain income-producing property, both real and personal, was given to the executor (John) and Louis S. Harris, who predeceased Harry H. Harris, subject to a life estate therein to the widow, Beebe Harris; that there are ample funds to pay the cash legacies, and that decedent's interest in certain partnership real property known as Harris Properties should be distributed so that income therefrom will become payable to the widow in accordance with the terms of the will.

On January 14, 1957, Judge Westwick made an order granting the petition for preliminary distribution. That order provided, among other things, that the executor "pay the following bequests: . . . (c) All of the right, title and interest of said decedent . . . in and to those certain real properties . . . known as 'Harris Properties' hereinafter specifically described, subject, however, to a life estate therein, to the widow of said deceased, Beebe Harris, . . . . Said property is described as follows: . . . ."

On April 15, 1959, John L. Harris, as executor, filed a petition for final distribution wherein he alleged, among other things, that pursuant to decree for preliminary distribution the cash bequests were paid; that under the terms of the will of decedent (Harry) all of his right, title, and interest in and to "Harris Properties" and "Harris Securities" was given to the brothers of said deceased, John L. Harris and Louis S. Harris, subject to a life estate therein, which life estate was given to Beebe Harris, the surviving wife of said decedent; that Louis S. Harris predeceased said Harry H. Harris "so

that under the will of said deceased [Harry] his entire interest in and to said 'Harris Properties' and 'Harris Securities' passed to his surviving brother, John L. Harris, subject to said life estate as hereinabove set forth''; that under the will of said deceased (Harry), the remainder of said estate of Harry was given to Beebe Harris, his surviving wife. The prayer of the petition was that all the estate be distributed to the parties entitled thereto.

On May 4, 1959, Judge Wagner made an order granting the petition for final distribution. The decree of final distribution, which was filed on May 4, 1959, provided in part as follows: ''That under the Will of said deceased, his brother, Louis S. Harris, was named as a co-legatee, with another brother, John L. Harris, of a certain cash bequest, as well as a devise of undivided interest in and to certain real and personal property; that the said Louis S. Harris predeceased the above-named decedent so that the said John L. Harris became entitled to the sole distribution of any and all property, both real and personal, given, devised and bequeathed to his and the said Louis S. Harris, either as joint tenants or as tenants in common; . . . . It further appearing to the court that under the will of said deceased, all of his interest in and to a certain partnership and the real property owned by it known and designated in said will as 'Harris Properties,' and all of the interest owned by said decedent in and to a certain partnership and the securities owned by it known and designated as 'Harris Securities,' were given, devised and bequeathed to his surviving brother, John L. Harris, subject, however, to a life estate therein given . . . to Beebe Harris, the surviving widow of said deceased . . .; that under the will of said deceased, all of the . . . remainder of his estate is given, devised and bequeathed to the said Beebe Harris . . .; . . . Therefore, It is . . . decreed as follows: 1. That the undivided thirty percent (30%) interest owned by said decedent in and to the assets of 'Harris Securities' . . . be and the same is hereby distributed to John L. Harris, brother of said deceased, subject, however, to a life estate of Beebe Harris, the surviving widow of said deceased. . . . 2. An undivided ⅓rd interest in and to the assets of 'Harris Properties' . . . be and the same is hereby distributed to John L. Harris, brother of said deceased, subject, however, to a life estate of Beebe Harris, the surviving widow of said deceased. . . . 3. An undivided one-quarter (¼) interest in all oil . . . and natural gas contained in . . . any portion of the hereinabove

described real property . . . be and the same is hereby distributed to John L. Harris, brother of said deceased, subject, however, to a life estate of Beebe Harris, the surviving widow of said deceased. . . . 4. That the . . . remainder of the estate . . . be and the same is hereby distributed to Beebe Harris. . . ."

No appeal was taken from the decree of final distribution.

John L. Harris died on June 30, 1960, and his wife Eva P. Harris, was appointed executrix of his will.

On October 7, 1960 (about 17 months after the decree of final distribution was made), Beebe Harris, the surviving wife of Harry H. Harris, filed a notice of motion for *nunc pro tunc* order correcting clerical mistakes in the order for preliminary distribution and in the decree of final distribution. The notice of motion stated that it would be made on the ground that the order for preliminary distribution was the result of clerical mistake and inadvertence on the part of Judge Westwick who signed said order, and that said order was not in fact the decision actually intended to be rendered by the judge or the decision that he in the exercise of judicial authority arrived at, and that it was not the intent of the judge to leave undistributed the said real property referred to in the petition (known as decedent Harry's ⅓ interest in the Harris Properties), but it was the intent of the judge (1) to distribute one-half of all the interest of decedent (Harry) in the Harris Properties to Beebe Harris, together with a life estate in the remaining one-half, and (2) to distribute the remaining one-half interest of Harry therein to John L. Harris, subject to said life estate.

The notice of motion also stated that it would be made on the ground that the decree of final distribution was the result of clerical mistake and inadvertence on the part of Judge Wagner who signed the decree, and that said decree was not in fact the decision actually intended to be rendered by the judge, or the decision that he in the exercise of judicial authority arrived at, and that it was not the intent of the judge to distribute to John L. Harris the whole of the "Harris Securities," subject to a life estate of Beebe Harris, but it was the intent of the judge to distribute one-half of the interest of decedent (Harry) in the "Harris Securities" to Beebe Harris, together with a life estate in the remaining one-half, and (2) to distribute to John L. Harris the remaining one-half interest of Harry therein, subject to said life estate.

The purpose of seeking the *nunc pro tunc* orders was to

change the order for preliminary distribution and the decree of final distribution so that Beebe Harris would receive one-half of Harry's interest in the Harris Properties and Harris Securities, and would receive a life estate in the other one-half of Harry's interest therein (instead of receiving a life interest in the properties and securities); and so that John L. Harris would receive the remainder interest in said other one-half after the life estate (instead of receiving all of Harry's interest therein, subject to the life estate). The asserted legal basis for seeking the *nunc pro tunc* change in the order and decree was that, by reason of the death of Louis prior to the death of Harry, the portion of Harry's interest in the Harris Properties and Securities which was given to Louis in Harry's will (i.e., one-half of Harry's interest) became a part of Harry's residuary estate and should have distributed to Beebe Harris, as the residuary beneficiary. (As above shown, the whole of Louis' portion of Harry's interest was distributed to John.)

The motion for the *nunc pro tunc* orders was heard by Judge Westwick and Judge Wagner, sitting in bank, on November 14, 1960. Judge Westwick, who made the order for preliminary distribution, denied the motion for an amendment of that order. Judge Wagner, who made the order of final distribution, granted the motion for an amendment of that order. On December 15, 1960, Judge Wagner signed and filed an order which stated (1) that said motion for an order *nunc pro tunc* correcting the decree of final distribution was granted, and (2) that the clerk was instructed to enter *nunc pro tunc,* as of May 4, 1959, a decree of final distribution in the form and content as a decree attached to said order.

The said order also stated as follows: ''Said order is made on the ground that the DECREE OF SETTLEMENT OF FINAL ACCOUNT AND FINAL DISTRIBUTION heretofore signed and entered on the 4th day of May, 1959, was the result of clerical mistake and inadvertence on the part of the Honorable Ernest D. Wagner, Judge of the Superior Court of the State of California in and for the County of Santa Barbara, who signed the said DECREE OF SETTLEMENT OF FINAL ACCOUNT AND FINAL DISTRIBUTION and that said DECREE OF SETTLEMENT OF FINAL ACCOUNT AND FINAL DISTRIBUTION signed and entered on or about the 4th day of May, 1959, was not in fact the decision actually intended to be rendered by the said Honorable Ernest D. Wagner, or the decision that he, in the exercise of judicial authority, arrived at, but that it was the intent of said Judge

to make an order in form and content all as set forth in the DECREE OF SETTLEMENT OF FINAL ACCOUNT AND FINAL DISTRIBUTION NUNC PRO TUNC attached hereto.''

The decree of ''Final Distribution Nunc Pro Tunc'' ordered: (1) that there be distributed to Beebe Harris an undivided one-half of the interest of decedent (Harry) in and to the ''Harris Securities'' and the ''Harris Properties,'' together with a life estate in the remaining undivided one-half interest of decedent in said securities and properties; (2) that there be distributed to John L. Harris the remaining undivided one-half of the interest of decedent in the ''Harris Securities'' and the ''Harris Properties,'' subject to a life estate therein to Beebe Harris; and (3) that there be distributed to Beebe Harris the remainder of the estate of decedent.

As above stated, Eva P. Harris, as executrix of the will of John L. Harris, deceased, appeals (1) from the order amending *nunc pro tunc* the original decree of final distribution, and (2) from the decree of final distribution as so amended.

Appellant contends that if there was any error in the decree of distribution, such error was judicial and not clerical, and it could not be corrected by a *nunc pro tunc* order. (Appellant asserts, however, there was no error in the decree.)

Appellant also contends that since the court interpreted the will in making the order for preliminary distribution, and since that order has become final, the question now raised as to the interpretation of the will was res judicata when the original decree of final distribution and the *nunc pro tunc* order were made. She contends further that the original decree of final distribution correctly interpreted the will and was consistent with the wishes of the testator.

A clerical error, as distinguished from a judicial error, may be corrected by a *nunc pro tunc* order. (*Estate of Eckstrom,* 54 Cal.2d 540, 544 [7 Cal.Rptr. 124, 354 P.2d 652].)

A court cannot, however, ''change an order which has become final even though made in error, if in fact the order made was that intended to be made.'' (*Ibid.*) In *Nacht* v. *Nacht,* 167 Cal.App.2d 254 [334 P.2d 275], it is said at page 262: '' '[R]ules to be followed in determining whether an error is clerical or judicial so that the court may have the power to correct it by amendment, are as follows: (1) No serious problem is involved where the correction is to include a matter inadvertently omitted, such as the grounds for granting a new trial, or where the error is plainly clerical.

586

(2) The serious problem arises where the amendment is sub-stantially different from the original order or substantially changes the rights of the parties. In such cases if the court is purporting to correct a clerical error, it should say so, or there should be something in the record to show it. (3) Where there is conflicting evidence as to whether the error was clerical, the reviewing court will probably accept the conclusion of the trial court. [Citation.] If the record shows clearly that there was no clerical error, the recital by the trial court will not be conclusive. [Citation.]' "

In *Smith* v. *Smith*, 115 Cal.App.2d 92 [251 P.2d 720], it is said at page 99: "The function of a *nunc pro tunc* order is merely to correct the record of the judgment and not to alter the judgment actually rendered—not to make an order now for then, but to enter now for then an order previously made. The question presented to the court on a hearing of a motion for a *nunc pro tunc* order is: What order was in fact made at the time by the trial judge?"

In *Estate of Eckstrom, supra* (54 Cal.2d 540 [7 Cal. Rptr. 124, 354 P.2d 652]), it was said at page 545: "While a clerical error is no longer to be limited to only those made by a clerk [citations], nevertheless, clerical errors do not include those made by the court because of its failure to correctly interpret the law or apply the facts. [Citations.] It is only when the form of the judgment fails to coincide with the substance thereof, as intended at the time of the rendition of the judgment, that it can be reached by a corrective *nunc pro tunc* order."

The will of the decedent gave his interest in the Harris Properties and the Harris Securities to his wife Beebe Harris to be held by her until her death or remarriage; and the will gave to his brothers, John and Louis, all of his interest in those properties and securities, subject to said interest given to his wife. The petition for final distribution stated that Harry's will gave all of his interest in the properties and securities to his brothers, John and Louis, subject to a life estate which was given to Beebe Harris; that Louis predeceased Harry "so that under the will" his entire interest in the property and securities passed to John, subject to Beebe's life estate; and that the residue of the estate was given to Beebe. The decree of final distribution ordered that all of the interest of Harry in the Harris properties and securities be distributed to John, subject to a life estate of Beebe Harris therein; and that the residue of the estate be distributed to

Beebe. The *nunc pro tunc* decree of final distribution ordered that one-half of the interest of Harry in the Harris properties and securities (i.e., one-half of the interest that would have been distributed to Louis) be distributed to Beebe Harris, and that she have a life estate in the remaining one-half interest of Harry in those properties and securities; that the one-half of Harry's interest therein, which was subject to Beebe's life estate, be distributed to John, subject to the life estate; and that the residue of the estate be distributed to Beebe.

It thus appears that the *nunc pro tunc* decree of final distribution is substantially different from the original decree and it substantially changed the rights of John L. Harris and Beebe Harris.

At the time of hearing the petition for final distribution, on May 4, 1959, there was no controversy or objection with respect to the interpretation of the will as alleged in the petition. It was alleged therein that Louis predeceased Harry "so that under the will" Harry's entire interest in the Harris Properties and Harris Securities passed to John, subject to Beebe's life estate. The decree of settlement of final account and final distribution is set forth in the court's minutes of May 4, 1959. Distribution under that decree was in accordance with the interpretation of the will as alleged in the petition. There is nothing in the minutes which indicates that the decision of the court was intended to be different from the allegations of the petition or from the provisions of the decree as signed by the judge and set forth at length in the minutes. (The minutes of that day include, in addition to the decree, the title of the court, the date, name of the judge, and the names of the attachés of the court.) At the hearing of the motion for a *nunc pro tunc* order amending the decree, Judge Wagner said, in response to questions by attorneys for the parties, that: "I have no distinct recollection of having read the Will prior to signing the Order of Final Distribution. I have no recollection of having read the Petition. . . . I intended to sign the Order which was placed before me, but, assuming it to be a correct Order and a correct interpretation of the Will, and that the Petition for Final Distribution was likewise correct. . . . I intended to make a correct Order in the matter. . . . I intended to sign that paper [the order for final distribution] which was placed before me for my signature, but with the intent on my part that

it was a correct recitation of the matters that should be in there.'' Counsel for Beebe Harris (respondent) asked the judge: ''Do I understand that it was the intention of the Court to enter an Order which conformed with the Court's interpretation of the provisions of the Will?'' He replied: ''That's right.'' Then said counsel asked: ''And do I understand that this Order does not conform with the Court's interpretation?'' The judge replied: ''That is my opinion after having gone over the matter since it's been brought before us on this,—— these last two occasions.''

Counsel for Eva Harris (appellant) asked Judge Wagner (at said hearing) if he had noticed that the order fixing the inheritance tax (which order the judge had signed) followed the interpretation placed on the will by the petition for preliminary distribution. The judge replied that he had learned that to be a fact, but he did not notice that at the time he signed the tax order; and that he intended to sign the tax order when he signed it, and he has gone over the order since that time, and he realizes that it was based upon the petition for preliminary distribution. Counsel for appellant asked the judge if he noticed that the will contains a paragraph which states that ''the decedent [Harry] with his brother and so forth, that this ranch has always been in the family'' and if he had ''taken that into consideration in now arriving at a decision that is contrary, apparently, to the Decree which you signed?'' The judge replied: ''I have, since that time, though; not before the paper was signed.'' Counsel for appellant asked the judge if he ''also considered the language in the *Estate of Moore* dealing with gifts to individuals or to a class, which specifically comments that where a provision in favor of brothers or sisters did not state, in equal shares, or, share and share alike, that there is an inference by the very nature of the opinion, that we then have a gift to a class instead of to individuals?'' The judge replied: ''I recall the language in the *Estate of Moore*, yes.'' Counsel for appellant asked if the order, signed on May 4, 1959, conforms to the truth of the record—does it conform to the truth of what actually happened? The judge replied that it ''conforms to what actually happened; also conforms to the fact that the Order reflects the prayer and the Petition for Final Distribution.'' Counsel for appellant said: ''But your answer is that the Order reflects the truth; is that right?'' He replied: ''That is what was done here, yes.'' Counsel asked: ''[W]hat was your intention, your Honor, at the time you signed the Order

for Final Distribution?'' He replied: ''My intention was to conform to the provisions of the Will.'' Counsel asked: ''And not to conform to the Petition for Final Distribution?'' He replied: ''Yes, if it was a correct interpretation of the provisions of the Will.'' Counsel asked: ''Now doesn't the Order [for Final Distribution] reflect the truth of what you did?'' He replied: ''Certainly it reflects the truth of what I did, but it wasn't my intention at any time to sign an erroneous Order . . . you are well aware as I am of the number of probate matters we have. . . . It is a physical impossibility for the Court to go over and read each of the papers that is filed in the matter. We have to depend upon counsel.'' Counsel asked: ''Do I understand you correctly . . . that you have reached a conclusion that the Order which you signed was not the Order which, in fact, you intended to sign?'' He replied: ''That is right.'' Counsel said: ''I would assume that you would be interested in hearing Mr. Roche as to his reasons why he presented the matter to you, his interpretation of the Will?'' The judge said: ''Certainly, if you wish to present it.'' Counsel said: ''But, if your position is now that an error was made, ——.'' The judge said: ''I am not taking the position to a finality that an error was made. There is a grave question in my mind as to whether there was not an error made, and I am quite willing to listen to any available testimony that is pertinent to the matter. I am not ruling upon the matter finally, in that respect.''

(Counsel for Beebe Harris, respondent, objected to testimony by Mr. Roche. After discussion regarding the offer of the testimony, the objection was sustained. The judge said that in sustaining the objection he had no questions in his mind as to the good faith on the part of Mr. Roche.)

When the final account and petition for final distribution were called for hearing on May 4, 1959, Mr. Roche, counsel for the executor John L. Harris, stated: ''This is the second and final Account and Supplement thereto which I am filing at this time; likewise Petition for Final Distribution of the Estate. Nothing unusual about it—the Estate is in a position to be closed—all taxes of every kind, nature and description have been paid.'' The judge said: ''Settled, allowed and granted.'' Mr. Roche said: ''I will prepare the Decree in accordance with your Honor's decision.''

Respondent (Beebe Harris) states that the issue on this appeal is whether the decree of final distribution was the result of clerical mistake and inadvertence on the part of the judge

or whether it was the result of judicial error. It is to be noted, however, that appellant contends (among other things) that the decree was not erroneous, but if there was any error therein it was a judicial error.

Respondent argues that the gift, under the will, to Louis S. Harris lapsed upon his death (prior to the testator's death), fell into the residuum, and was properly distributable to respondent Beebe Harris as the residuary beneficiary. She argues further that the provision in the will relative to giving all of the testator's interest in the properties and securities to his brothers was not a class gift but was a gift in common to individuals. She also asserts that in Santa Barbara County, where there are no probate court commissioners, it would be impossible for the judge to acquaint himself with the details of each matter prior to hearing the probate calendar, and it would be impossible for him to scrutinize each proposed decree when it is presented to him; and that the judge relies upon counsel to draft orders which comply with the law.

Respondent asserts further that the statements made by the judge, at the hearing on the motion for the *nunc pro tunc* order, disclose that he did nothing but sign a piece of paper which had been presented to him as a decree complying with the provisions of the will; that he did not exercise any independent judgment, and that his act in signing the paper was an empty act.

The question here is whether the judge by reason of clerical error or inadvertence failed to make a decree that was in accordance with a decision that he intended to render at the time of signing the original decree. Statements of the judge at the time of the hearing on the motion for the *nunc pro tunc* order are general statements to the effect that he intended to sign a decree that was a correct interpretation of the will, but the statements do not indicate that at the time of signing the original decree he had in mind a specific interpretation of the will which he was then intending to embody or record in the decree. Since the statements are to the effect that the judge had not read the will or the petition for final distribution prior to hearing the petition or prior to signing the original decree, it would seem that at the time of signing the decree he did not have in mind an interpretation of the will which he failed to embody or record in the decree.

There is nothing in a minute order, or on the face of the decree, or in any phonographic report of any of the proceedings, which indicates there was an existing intention, at the

time of making the decree, of rendering a decision wherein the interpretation of the will or the distribution of the estate was different from the decree as signed. Prior to signing the decree of final distribution, a decree of preliminary distribution had been made by Judge Westwick, and an order fixing inheritance tax had been signed by Judge Wagner, which decree and order were based upon an interpretation of the will which was in effect the same interpretation as the interpretation stated in the original decree of final distribution.

As above stated, the intention of the judge, at the time of signing the original decree, was a general one in that, as stated by him, he intended to sign a correct decree. In carrying out that intention, it appears that the judge relied upon counsel to prepare a correct decree, and that, at the time of signing the decree, he did not have in mind any particular interpretation of the will, but he signed the proposed decree as presented to him without examining it. The decree signed under such circumstances was not a nullity. It was the decree of the court. The question herein is whether the *nunc pro tunc* remedy is applicable. It is not applicable unless, by reason of clerical error or inadvertence, the decree was not in accordance with the decree that the judge then intended to render. On the question as to whether there was such error or inadvertence, it is of significance that the judge stated at the hearing on the motion for the *nunc pro tunc* order: "I am not taking the position to a finality that an error was made. There is a grave question in my mind as to whether there was not an error made, and I am quite willing to listen to any available testimony that is pertinent to the matter. I am not ruling upon the matter finally in that respect." (That statement was made when the counsel who presented the proposed decree offered to testify regarding his position in the matter.) It thus appears that it was not clear that an error had occurred.

In *Nacht* v. *Nacht*, 167 Cal.App.2d 254 [334 P.2d 275], wherein a final decree of divorce *nunc pro tunc* was entered, the court said, at page 265: "Can the judge, by merely declaring that a prior ruling was entered inadvertently, set that ruling aside and enter a different ruling? Will the appellate court, based on such a declaration alone conclusively presume that the change in mind occurred prior to the entry of the first order? We think not. The sanctity of judicial pronouncements cannot be made to depend on such insecure foundations. Once made, a judicial pronouncement cannot be set aside except as provided by law. Certainly it cannot be set aside by

the judge who pronounced it simply changing his mind on the law or the facts. If a prior judgment or order is to be set aside there must be something more in the record to support the order than the mere declaration of the trial judge that the prior order was entered inadvertently. The court had no legal power to correct a judicial error in this fashion.''

The showing herein as to alleged clerical error or inadvertence was not legally sufficient as a basis for amending the order or decree *nunc pro tunc.*

By reason of the above conclusion herein regarding the *nunc pro tunc* order, it is not necessary to determine the other contentions of appellant to the effect (1) that the question of interpretation of the will was res adjudicata by reason of the order for preliminary distribution, and (2) that the decree of final distribution correctly interpreted the will.

It appears from a motion made herein to augment the record that the respondent has commenced an action in equity to impose a trust upon the property allegedly distributed erroneously to appellant.

The order amending *nunc pro tunc* the decree of final distribution, and the decree of final distribution *nunc pro tunc,* are reversed.

Fourt, J., and Lillie, J., concurred.

A petition for a rehearing was denied March 16, 1962, and respondent's petition for a hearing by the Supreme Court was denied April 18, 1962.