Filed 4/29/16  Estate of Watson CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| Estate of DENNIS I. WATSON, Deceased. | |
| MARY S. WATSON,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>CYNTHIA D. WATSON,<br><br>Defendant and Appellant. | F071927, F072303<br><br>(Super. Ct. No. 444557)<br><br>**OPINION** |

APPEAL from an order of the Superior Court of Fresno County.  Debra J. Kazanjian, Judge.

Coleman & Horowitt and Eliot S. Nahigian for Defendant and Appellant.

Baker Manock & Jensen and Jeffrey A. Jaech for Plaintiff and Respondent.

-ooOoo-

In this probate proceeding, appellant appeals from a nunc pro tunc order correcting an alleged clerical error in the judgment of final distribution entered in 1992.  We conclude the error was not a clerical error that the trial court could correct at any time by a nunc pro tunc order.  Accordingly, we reverse the order.

## *FACTUAL AND PROCEDURAL BACKGROUND*

In 1991, Mary Watson, in propria persona, petitioned for probate of the will of her deceased husband, Dennis Watson. She was appointed executor of his will. With the help of a paralegal, she later petitioned for final distribution of the estate and submitted a proposed judgment of final distribution. The petition listed the heirs as Mary,[1] decedent's spouse; Cynthia D. Knott (also known as Cynthia D. Watson), decedent's daughter from a previous marriage; Martin R. Claborn and Kimberly D. Garrett (also known as Kimberly Claborn Miller), decedent's stepchildren (Mary's children). The petition requested that decedent's one-half community property interest in the household furnishings and personal property be distributed to Mary as her sole and separate property, and the residue of decedent's estate (which included three parcels of real property) be distributed to Mary in trust, on the terms set out in provisions Sixth, Seventh, and Eighth of the will. Those provisions of the will, which were attached to the petition for final distribution, provided that the residue of the estate was to be held in trust, with income to Mary for life; after her death, the trust estate would be distributed in equal shares to each of decedent's children then living and each group of issue of a deceased child. In August 1992, the probate court granted Mary's petition and entered the judgment of final distribution as submitted by Mary.

In May 2014, Mary filed a petition to correct a clerical error in the judgment and to amend the judgment nunc pro tunc. Her petition contended provision Second of decedent's will was inadvertently omitted from the judgment of final distribution. Provision Second of the will contained a definition of the term "children," which defined the term to include stepchildren. The petition to correct clerical error alleged the paralegal who prepared the petition for final distribution and the judgment of final

---

[1]      We refer to the parties by their first names for clarity and convenience, because some of them share a last name or have multiple last names. No disrespect is intended.

distribution on Mary's behalf neglected to include this definition of "children" in both documents. Mary assumed the remaindermen of the testamentary trust were Cynthia, Martin and Kimberly, until April 2014, when she consulted an estate planning attorney and was advised the language of the judgment made Cynthia the sole remainderman of the trust.

Mary alleged the judgment did not conform to the decedent's will and the error in the language of the judgment was apparent from the face of the judgment roll and should be corrected. Cynthia opposed the petition, contending there was no error in the judgment, or if there was an error, it was not a clerical error that could be corrected nunc pro tunc. The probate court granted Mary's petition to correct clerical error and amended the judgment of final distribution nunc pro tunc to add a definition of the term "children" consistent with the terms of provision Second of the will. Cynthia appeals.[2]

## DISCUSSION

### I. Standard of Review

Under Code of Civil Procedure section 473, subdivision (d),[3] "[t]he court may, upon motion of the injured party, or its own motion, correct clerical mistakes in its judgment or orders as entered, so as to conform to the judgment or order directed." Relief under section 473 "is addressed to the sound discretion of the trial court and the trial court's order will not be disturbed absent a showing of clear abuse of discretion." (*Conservatorship of Tobias* (1989) 208 Cal.App.3d 1031, 1035.) "The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are

---

[2]     Cynthia filed notices of appeal from both the April 9, 2015, order after hearing and the April 9, 2015, order correcting clerical error and amending judgment nunc pro tunc. The appeals have been consolidated.

[3]     All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711–712.)  When a trial court's order was based on a misinterpretation of applicable law, an abuse of discretion is established.  (*Katiuzhinsky v. Perry* (2007) 152 Cal.App.4th 1288, 1294, fns. omitted.)

## II.     Nunc Pro Tunc Order

"'The rule is well settled in this state that every court of record has the inherent power to correct its records so that they shall conform to the facts and speak the truth, and likewise correct any error or defect occurring in a record through acts of omission or commission of the clerk in entering of record the judgments or orders of the court, and such correction may be made at any time by the court on its own motion, ... [Citations.] [¶]  It is equally well established that the court in the exercise of this power is not authorized to do more than to make its records conform to the actual facts, and cannot, under the form of an amendment of its records, correct a judicial error, or make of record an order or judgment that was never, in fact, given. ... [Citations.]'  [Citation.]  [¶]  It is not the function of a *nunc pro tunc* order 'to make an order now for then, but to enter now for then an order previously made.'"  (*Siegal v. Superior Court* (1968) 68 Cal.2d 97, 101.)  "'The question presented to the court on a hearing of a motion for a *nunc pro tunc* order is:  What order was in fact made at the time by the trial judge?'"  (*Estate of Eckstrom* (1960) 54 Cal.2d 540, 544 (*Eckstrom*).)

## III.    Correction of Clerical Error

"'The function of a *nunc pro tunc* order is merely to correct the record of the judgment and not to alter the judgment actually rendered.'"  (*Eckstrom*, *supra*, 54 Cal.2d at p. 544.)  The trial court cannot "change an order which has become final even though made in error, if in fact the order made was that intended to be made."  (*Ibid*.)  Thus, we must determine what judgment was rendered by the trial court originally and whether the judgment entered failed to properly reflect that judgment through clerical error.

The order originally made by the trial court "is presumed to be that intended in the absence of contrary evidence [citation], and the fact of error alone cannot rebut that presumption." (*Eckstrom*, *supra*, 54 Cal.2d at p. 548.) Thus, in order to overcome the presumption and enter an order correcting a clerical error, there must be evidence that the order as entered was not the order the trial court judge intended at the time to make.

In this case, there was no evidence the judge intended to make any order other than the one originally entered. In past cases, evidence of the judge's intent has taken the form of the recollection or testimony of the judge who made the order (*Estate of Doane* (1964) 62 Cal.2d 68, 70 (*Doane*); *Estate of Remick* (1946) 75 Cal.App.2d 24, 29 (*Remick*); *Carpenter v. Pacific Mutual Life Ins. Co.* (1939) 14 Cal.2d 704, 709–710), the judge's handwritten notes (*In re Roberts* (1962) 200 Cal.App.2d 95, 98; *Carpenter*, *supra*, at p. 709), the clerk's minutes (*Estate of Harris* (1962) 200 Cal.App.2d 578, 587–588), the court reporter's transcript or affidavit (*Nathanson v. Murphy* (1957) 147 Cal.App.2d 462, 468; *Carpenter*, *supra*, at p. 710; *Kaufman v. Shain* (1896) 111 Cal. 16, 23–24), or the testimony of attorneys present when the decision was rendered (*Nathanson, supra,* at pp. 467–468). Here, there was no evidence of any discrepancy between the judgment entered and the judgment the judge rendered or intended to render.

The only evidence presented by Mary in support of her petition to correct clerical error was evidence that the paralegal who drafted the petition for final distribution of the estate and the proposed judgment of final distribution on Mary's behalf mistakenly omitted certain provisions of the will from those documents. Evidence of the paralegal's error is not evidence of the judge's intent. An error by a party's attorney or the attorney's staff in preparing a judgment may be a correctable clerical error, when it causes the formal written judgment to not reflect the judgment actually rendered by the court. (See *Estate of Goldberg* (1938) 10 Cal.2d 709, 710–711, 717 (*Goldberg*) [clerical error where the minute order granted the decree of distribution "'*in accordance with terms of the will*'" and required attorney to prepare a "'*proper decree*,'" but order prepared omitted

name of one heir]; *Zisk v. City of Roseville* (1976) 56 Cal.App.3d 41, 47 [clerical error in judgment of dismissal when trial court sustained demurrer of all the defendants without leave to amend, but attorney-prepared judgment dismissed action against city only, and failed to include the individual defendants]; *Russell v. Superior Court* (1967) 252 Cal.App.2d 1, 6, 8 [clerical error where parties stipulated to review of alimony order upon entry of a final decree, and parties and trial court intended trial court to reserve power to modify alimony, but attorney-prepared final decree of divorce seemed to make review merely permissive]; *Cunningham v. Frymire* (1960) 180 Cal.App.2d 891, 893 [in partition action, where the parties litigated concerning four pieces of real property, trial court properly corrected omission of legal description of one property from findings and conclusions and interlocutory decree prepared by the plaintiff's attorney].)

However, "[i]f the court misconstrued the evidence before it, or misapplied the law applicable to the facts disclosed by the evidence, *or was even misled by counsel*, such an error was in no sense a clerical error which could thereafter be corrected by the court upon its own motion or in any proceeding except on motion for a new trial." (*Lankton v. Superior Court* (1936) 5 Cal.2d 694, 696, italics added.) Here, the probate court did not render a judgment separate from or prior to the preparation of the written judgment of final distribution. The paralegal prepared the proposed judgment and Mary submitted it and requested that it be entered. The evidence demonstrates the probate court judge entered exactly the judgment he was asked to enter. Both the petition and the judgment contained the same provisions. There was no evidence the judge intended to enter a judgment that included the omitted definitions despite Mary's failure to request such a judgment.

Our Supreme Court has rejected an argument that a judgment may be corrected on the ground it was not the judgment the trial court ought to have made. (*Eckstrom*, *supra*, 54 Cal.2d at pp. 545–546.) "If this theory were carried to its logical and ultimate conclusion it would give to a motion made pursuant to section 473 of the Code of Civil

6.

Procedure the efficacy of a motion for new trial or an appeal long after the time for making such a motion or filing an appeal had expired. If not carried to that extreme it would, nevertheless, permit the court in each instance to determine that a particular judicial error, although resulting in an order or judgment the court intended to make, might be presumed to be a clerical misprision in order that the court could do what should have been done on motion for a new trial or an appeal. [Citation.] Neither of these results lie within the purview of section 473 nor of any inherent power of the court to correct its own error." (*Id*. at pp. 546–547.) It follows that "it is not proper to amend an order nunc pro tunc to correct judicial inadvertence, omission, oversight or error, or to show what the court might or should have done as distinguished from what it actually did. An order made nunc pro tunc should correct clerical error by placing on the record what was actually decided by the court but was incorrectly recorded. It may not be used as a vehicle to review an order for legal or judicial error by 'correcting' the order in order to enter a new one." (*Hamilton v. Laine* (1997) 57 Cal.App.4th 885, 891 (*Hamilton*).)

Unlike *Goldberg*, the probate court in this case did not render a broad order to distribute the assets of the estate pursuant to the terms of the will, while the judgment thereafter prepared by counsel and entered by the court overlooked some of the terms of the will. In *Goldberg*, the decedent left a piece of real property to his daughter, Emma, in trust for his son, Fritz. (*Goldberg*, *supra*, 10 Cal.2d 710.) The will provided that, if Fritz died leaving issue, the property would vest in his issue; if he died without wife or issue, it would vest in the decedent's four children, listed by name. (*Id*. at p. 710.) The petition for final distribution of the estate attached a copy of the will and requested that the residue of the estate "'be distributed to those entitled thereto.'" (*Ibid*.) The probate court's minute order stated: "'Decree of distribution granted in accordance with terms of the will, and the Court directs that the proper decree be prepared and filed herein.'" (*Id*. at p. 711.)

7.

The decree of final distribution actually entered in the decedent's probate proceeding omitted Fritz's name from the list of children in whom the property would vest if he died leaving no wife or issue. Thirty-five years later, on Fritz's death, when the only surviving child of the decedent sought distribution of the trust property to himself, the probate court made a nunc pro tunc order correcting a clerical error in the decree of distribution to conform to the provisions of the will by adding Fritz to the list of the decedent's children in whom the property would vest if Fritz died without wife or issue. (*Goldberg*, *supra*, 10 Cal.2d at p. 711.)

The appellate court determined the probate court properly corrected a clerical error in the original decree of distribution. Decedent's will directed that the property be divided among his four children. (*Goldberg*, *supra*, 10 Cal.2d at p. 714.) The petition for distribution asked that decedent's property be distributed to those entitled to it. The decree of distribution was granted "'*in accordance with the terms of the will*'" and directed preparation of a "'*proper decree*.'" (*Ibid*.) There was no contrary evidence indicating the original probate court intended to make an order not in conformity with the will. Although the error was not made by the clerk, the court concluded it was properly determined to be a clerical error that could be corrected by the probate court at any time, even thirty-five years later. (*Id*. at pp. 714–717.)

Mary argues that, as in *Goldberg*, the probate court here ordered distribution as directed in the will. The record is to the contrary. The petition for final distribution asked that the residue of the estate be distributed to Mary in trust "upon the terms and provisions of Paragraphs SIXTH, SEVENTH and EIGHTH of the Will, a copy of which paragraphs is attached hereto." The attachment contained only provisions Sixth, Seventh, and Eighth of the will. The minute order was on a form with boxes to check. It simply ordered that the petition for final distribution be granted. The judgment of final distribution, which the probate judge signed, ordered that the residue of decedent's estate be distributed to Mary "to be held, administered and distributed in accordance with the

8.

provisions of paragraphs SIXTH, SEVENTH and EIGHTH of decedent's Will, as follows," thereafter quoting in full those provisions.

Thus, the probate court's judgment did not, as did the decree in *Goldberg*, broadly order that the residue of the estate be distributed pursuant to the provisions of the will. Rather, it specifically ordered that the residue be "held, administered and distributed in accordance with" the terms of provisions Sixth, Seventh, and Eighth of the will only. It identified and quoted only those provisions. The judgment was consistent with the petition for final distribution, which asked that the residue be distributed pursuant to provisions Sixth, Seventh, and Eighth of the will. The probate court granted the petition. There was no evidence the probate court considered doing or intended to do anything other than what was requested and what the judgment of final distribution indicates it did: order distribution of the residue of the estate in accordance with the terms of provisions Sixth, Seventh, and Eighth of the will.

In *Eckstrom*, 20 months after entry of the final decree of distribution, the executor of the will filed a motion to correct an alleged clerical error in the decree. (*Eckstrom*, *supra*, 54 Cal.2d at p. 542.) As requested in the petition for final distribution, the decree ordered distribution of one-third of the estate, less a certain amount for federal estate taxes, to a trustee. The executor's motion requested that the deduction of estate taxes be eliminated, because the trust had already been credited with payment of those taxes. The probate court granted the motion, concluding the provision for deduction of taxes was a clerical error, not reasonably attributable to the exercise of judicial discretion. (*Id.* at p. 543.)

The Supreme Court concluded the probate court could not correct the judgment to conform to what it ought to have provided. (*Eckstrom*, *supra*, 54 Cal.2d at pp. 546–547.) It recognized trial courts have both an inherent and a statutory right to cause their acts and proceedings to be correctly set forth in their records, where the records fail to indicate the order or direction in fact made. "By its very nature, however, the right is

9.

exercisable only for the purpose of ascertaining and reflecting the truth. In most instances, as in the present case, the truth must be ascertained from the intention of the trial judge in making his original order." (*Id*. at p. 547.) There was no testimony from the judge who entered the judgment regarding his intent. (*Id*. at p. 548.) The only evidence was the petition for, proceedings on, and judgment of final distribution, "all of which indicate that the trial judge performed an intentional, if erroneous, act. The decree complied strictly with the prayer of the petition. They both were prepared by the executor who was also the trustee prejudicially affected. The decree was approved by the attorneys for the other beneficiaries and by the probate commissioner." (*Id*. at p. 547.) There was no evidence the trial judge intended to make a different decree, other than the conclusion he ought to have done so. (*Ibid*.) "The order made is presumed to be that intended in the absence of contrary evidence [citation], and the fact of error alone cannot rebut that presumption." (*Id*. at p. 548.) Accordingly, the court concluded the claimed error was judicial in nature, and was improperly corrected by the trial court. (*Ibid*.)

As in *Eckstrom*, in this case there was no testimony from the judge who entered the judgment of final distribution regarding his intention when he entered the judgment. There was no objection to the terms of the proposed judgment by any party. The documents submitted to the court—the petition for final distribution and the judgment of final distribution—contained the same provisions and did not indicate any intention to have some other judgment entered. There was no evidence the original probate judge intended to enter any judgment other than the one actually requested and entered. The court hearing the motion to correct clerical error was not free to disregard the original judgment or the intention of the judge who entered it, or to enter the judgment it believed ought to have been entered in the guise of correcting a clerical error.

When there is no evidence the judge who entered the original judgment intended to enter a different judgment, a nunc pro tunc order correcting alleged clerical error is improper. In *Estate of Steiner* (1966) 240 Cal.App.2d 78 (*Steiner*), the decree of

10.

distribution ordered that the residue of the decedent's estate be distributed to Carl Steiner for his life and, on his death, to the decedent's mother, sisters and brothers. (*Id*. at pp. 79–80.) Twenty-seven months later, the executor moved for and obtained a nunc pro tunc order for distribution of the residue to Carl Steiner, "'together with all the rents, issues, benefits and income, to do with as he sees fit,'" and upon his death to the same specified persons, "'provided they are living at the time of the death of Carl Steiner.'" (*Id*. at p. 80.) The court noted the provisions, as corrected, appeared in the will and in the petition for final distribution. (*Id.* at pp. 82–83.) There was no explanation for the omission of the language from the final decree. The motion to correct the alleged error attributed its omission to inadvertence, mistake, and clerical error. (*Id*. at p. 83.)

The motion was heard by a judge other than the one who entered the original decree. There was no testimony from the judge who entered the original order. (*Steiner*, *supra*, 240 Cal.App.2d at p. 83.) No evidence was taken, and the ruling was based on the record. (*Ibid*.) The original decree of distribution was in accordance with the prayer of the petition. The court concluded the modification of these provisions substantially altered the disposition of the residue of the estate, and a nunc pro tunc order could not be used for this purpose. (*Id*. at p. 82.) Further: "It may have been error, but there is nothing to justify the conclusion that it was an inadvertent slip, not a mistake of judgment, without which an order correcting the final decree, long since final, may not be made *nunc pro tunc*." (*Id*. at p. 84.) The court reversed the nunc pro tunc order. (*Id*. at p. 85.)

In *Estate of Harris* (1962) 200 Cal.App.2d 578 (*Harris*), the decedent left his interest in the Harris properties and the Harris securities to his wife, Beebe, until her death or remarriage, and then to his brothers. (*Id*. at p. 580.) The petition for a decree of final distribution alleged that one of the brothers had predeceased decedent, and requested that the decedent's entire interest in the Harris properties and Harris securities pass to the surviving brother, John, subject to Beebe's life estate. The probate court

granted the petition and ordered the decedent's interest in the Harris properties and Harris securities to be distributed to John, subject to Beebe's life estate. (*Id*. at p. 582.) After John's death, Beebe moved for a nunc pro tunc order correcting clerical mistakes in the decree of final distribution, allegedly made through the mistake and inadvertence of the judge who entered it. (*Id*. at p. 583.) She contended the judge did not intend to distribute all of the decedent's interest in the Harris properties and Harris securities to John. Rather, he intended to distribute to Beebe one-half of the decedent's interest and a life estate in the other one-half, and to distribute a one-half interest to John, subject to Beebe's life estate. (*Ibid*.)

The judge who entered the original judgment granted the motion and entered the nunc pro tunc judgment, stating that the original order was the result of clerical mistake and inadvertence, and was not the decision he intended to render. (*Harris*, *supra*, 200 Cal.App.2d at p. 584.) The appellate court reversed. The petition for final distribution alleged that, under the will, because one brother predeceased the decedent, the entire interest in the Harris properties and the Harris securities passed to John, subject to Beebe's life estate; there was no dispute about this interpretation of the will at the time the petition was heard. (*Id*. at p. 587.) The decree of final distribution was in accordance with that interpretation. The judge who entered the original judgment had "'no distinct recollection of having read the Will prior to signing the Order for Final Distribution [and] no recollection of having read the Petition.'" (*Ibid*.) He "'intended to sign the Order which was placed before'" him, but "'with the intent … that it was a correct recitation of the matters that should be in there.'" (*Id*. at pp. 587–588.) He expressed his intent that the order conformed to his interpretation of the will, but that, after going over the matter, he believed it did not do so. (*Id*. at p. 588.) He conceded the judgment originally entered conformed to what actually happened and reflected the truth of what was done. (*Ibid*.) He could not say with finality that an error was made. (*Id*. at p. 589.)

The court stated:

"The question here is whether the judge by reason of clerical error or inadvertence failed to make a decree that was in accordance with a decision that he intended to render at the time of signing the original decree. Statements of the judge at the time of the hearing on the motion for the *nunc pro tunc* order are general statements to the effect that he intended to sign a decree that was a correct interpretation of the will, but the statements do not indicate that at the time of signing the original decree he had in mind a specific interpretation of the will which he was then intending to embody or record in the decree. Since the statements are to the effect that the judge had not read the will or the petition for final distribution prior to hearing the petition or prior to signing the original decree, it would seem that at the time of signing the decree he did not have in mind an interpretation of the will which he failed to embody or record in the decree.

"There is nothing in a minute order, or on the face of the decree, or in any phonographic report of any of the proceedings, which indicates there was an existing intention, at the time of making the decree, of rendering a decision wherein the interpretation of the will or the distribution of the estate was different from the decree as signed." (*Harris*, *supra*, 200 Cal.App.2d at pp. 590–591.)

Although the judge had relied on counsel to prepare a correct decree and had signed the original decree without examining it or having any particular interpretation in mind, the decree was not a nullity, but the decree of the court. (*Harris*, *supra*, 200 Cal.App.2d at p. 591.) Noting that a judge who entered an order could not set it aside simply because he changed his mind, the court found the showing of clerical error insufficient to amend the decree nunc pro tunc and reversed the nunc pro tunc order. (*Id.* at p. 592.)

Here, the executor of the will petitioned for final distribution of the estate and presented the probate court with a proposed judgment of final distribution. The petition and the proposed judgment contained the same provisions for distribution of the estate. The judge signed the proposed judgment without change. There was no testimony from the original judge at the hearing of the motion to correct clerical error. There was nothing in the record, and no evidence presented, to indicate the judge intended to enter

13.

any judgment other than the one presented to him, which the executor requested he sign and to which no one objected.

In the order after hearing, the probate judge who heard the motion to correct clerical error stated: "In this case, there is no evidence the issuing court intended to omit the definition of 'children' in the Judgment of Final Distribution. The Will, the Petition for Probate and the Petition for Final Distribution all contained provisions setting forth the legatees. In particular, both the Petition for Probate as well as the Petition for Final Distribution specifically name the step children as beneficiaries under the Will." In considering a motion to correct a clerical error nunc pro tunc, however, we must begin with a presumption the order entered was the order intended by the judge who entered it. (*Eckstrom*, *supra*, 54 Cal.2d at p. 548.) Then, we look for any evidence of a contrary intent on the part of that judge. There is no evidence in the record that the original judge intended to do anything other than enter the judgment submitted by the executor.

A trial court cannot alter an original judgment to enter a new judgment, based on what the trial court now believes should have been entered, in the guise of correcting a clerical error. "'[A]mendment of the record of a judgment, and a nunc pro tunc entry of it, may not be made to correct a judicial error involving the merits, or to enlarge the judgment as originally rendered, or to supply a judicial omission or an affirmative action which should have been, but was not, taken by the court, or to show what the court might or should have decided, or intended to decide, as distinguished from what it actually did decide, even if such failure is apparently merely an oversight. [¶] The power of the court in this regard is to make the journal entry speak the truth by correcting clerical errors and omissions, and it does not extend beyond such function.'" (*Hamilton*, *supra*, 57 Cal.App.4th at pp. 890–891, italics omitted.) The evidence relied on by the probate judge that heard the motion to correct clerical error was, at best, evidence of what the judgment ought to have been, not evidence of what the original judgment was or what the original judge intended it to be. The order correcting clerical error adds language to the judgment

14.

of final distribution that was not included in the original judgment as rendered, without any evidence that the trial court intended to make it part of the original judgment, but inadvertently omitted it.

*Doane* and *Remick*, which were cited in the order after hearing, are distinguishable. In *Doane*, the beneficiaries of a testamentary trust moved to correct the order for preliminary distribution of the decedent's estate, asserting the order did not follow the provisions of the will. (*Doane*, *supra*, 62 Cal.2d at p. 69.) At the hearing of the motion, the judge who entered the original order testified that he intended to direct distribution in accordance with the terms of the will and the order entered did not express the decision he intended to make. (*Id*. at p. 70.) The Supreme Court concluded that, because the judge testified he intended to follow the will and the order did not do so, the error was clerical, rather than judicial. (*Id*. at p. 71.)[4]

In *Remick*, the decedent's will left certain property to her husband, for his life, and upon his death, the property "'*or the value thereof*'" was to be divided among her brothers. (*Remick*, *supra*, 75 Cal.App.2d at p. 26.) The petition for distribution of the decedent's estate reflected that provision. The decree of distribution made a finding in the same language, but in the order for distribution, provided that the property "'*or the proceeds thereof*'" was to be divided among the brothers. (*Ibid*.) The trial court granted the brothers' motion to correct that language of the decree nunc pro tunc, on the ground the error was a clerical error. (*Id*. at p. 25.) The original trial court's minute order granted the petition for distribution "'*as prayed for*.'" (*Id*. at p. 29.) This was evidence of the decree the trial court intended to make; it intended to order distribution of the

---

**4**    The dissent argued the error was judicial. The original order "was precisely the order the probate judge ordered entered. No one misconstrued the judge's order or intent. It was simply a case of the trial judge entering an order that followed the precise terms of the petition without comparing it with the terms of the will. The court simply failed to interpret correctly the facts. Such an error is judicial. The error of the judge cannot be corrected in such a fashion." (*Doane*, *supra*, 62 Cal.2d at p. 73.)

property "'*or the value thereof*,'" as requested in the petition.  Further, the decree itself used the term "'*or the value thereof*'" in its findings.  (*Ibid*.)  The court upheld the amendment of the decree, stating:  "It therefore appears without question that the language used in the distributive portion of the decree did not conform to the will, to the prayer of the petition, to the minute order, or to the findings, all of which indicates that the use of the words 'or the proceeds thereof' instead of 'or the value thereof' was inadvertent and constituted a clerical error, as the court in its order amending states that it did."  (*Ibid*.)

Here, there was no testimony of the original judge as to his intent in entering the judgment of distribution.  There was no minute order or conflicting language in the judgment of distribution itself that indicated an intent contrary to that expressed in the distributive portion of the judgment of distribution.  There was no evidence from which the trial court could conclude the judgment of distribution as written did not reflect the judgment the original judge actually rendered or intended to render.  Consequently, substantial evidence does not support the facts on which the trial court's order correcting clerical error was based, and the trial court abused its discretion by entering that order.

## IV.    Testator's Intent

Mary argues the correction of the judgment of distribution was proper because it effectuated the testator's intent and the original judgment did not.  When a request is made to correct a clerical error in a judgment, the issue is whether the judgment as entered reflected the judgment actually rendered by the trial court, not whether the judgment effectuated the testator's intent.

> "A decree of distribution is a judicial construction of the will arrived at by the court ascertaining the intent of the testator.  [Citations.]  Once final, the decree supersedes the will [citations] and becomes the conclusive determination of the validity, meaning and effect of the will, the trusts created therein and the rights of all parties thereunder.  [Citations.]

"If the decree erroneously interprets the intention of the testator it must be attacked by appeal and not collaterally.… It is well settled that 'where the decree of distribution is contrary to the provisions in the will, the decree controls and prevails over the terms of the will with respect to the distribution of the property.'" (*Estate of Callnon* (1969) 70 Cal.2d 150, 156–157.)

To amend the judgment twenty-two years after it was entered in an attempt to conform it to the testator's intent would be to change the substance of the judgment based on what the trial court hearing the matter now believes the trial court ought to have done originally. This it cannot do through a nunc pro tunc order purporting to correct a clerical error in the judgment.

## *DISPOSITION*

The April 9, 2015, order after hearing and order correcting clerical error and amending judgment nunc pro tunc are reversed. The trial court is directed to enter a new order denying Mary's motion to correct clerical error and amend the judgment nunc pro tunc. Cynthia is entitled to her costs on appeal.

_____
HILL, P.J.

WE CONCUR:


_____
LEVY, J.


_____
GOMES, J.

17.